(21 Misc. Rep. 666.)

LESSER v. RAYNER.

(Supreme Court, Appellate Term. November 24, 1897.)

LEASE—CONSTRUCTION—REMOVAL OF IMPROVEMENTS—CONVERSION.

A lease of a city lot with a business building and sheds thereon, provided "that all the buildings, sheds, stables, and structures of any description thereon and thereat constructed or reconstructed" by the lessee, "and improvements and alterations by him made," should become the property of the lessor. During the term the lessee improved the sheds by introducing stalls or partitions, which he affixed by screws, cleats, and slides, and which, at the end of the term, he removed. *Held,* that the removal violated his covenant, and constituted conversion.

Appeal from Third district court.

Action by Ulrice Lesser against Julius Rayner. From a judgment, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Robert J. Mahon, for appellant.

M. A. Lesser, for respondent.

McADAM, J. The assignee of one Marianne Keller brings the action to recover damages for conversion. On November 6, 1893, the plaintiff's assignor leased to the defendant a lot of land in the city of Hoboken, N. J., with a brick front building and certain sheds thereon, for the term of three years from May 1, 1894. The brick building was let for business purposes, and the sheds for storage or stabling. The lease contains the special covenant that the tenant will, at the expiration of the term, quit and surrender the premises in as good state and condition as reasonable use and wear thereof will permit, and that "all the buildings, sheds, stables, and structures of any description thereon and thereat constructed or reconstructed by the party of the second part [the defendant], and all improvements and alterations by him made on said premises, shall be and become the property of the party of the first part [plaintiff's assignor] without claim for compensation therefor." During the tenancy the defendant made a number of improvements in the sheds, converting them into stables by the introduction of stalls or partitions affixed by screws, cleats, and slides, and at the expiration of the term removed said improvements; and the question presented is whether such removal violates the defendant's covenant, and constitutes conversion. As the interest of a tenant in land is but temporary, the law generally infers that what he annexes for himself with a view to his own enjoyment during his term, and not to enhance the value of the estate, and which can be detached without material injury to the freehold, may be removed by him. Tifft v. Horton, 53 N. Y., at page 382. In this instance the right to remove

does not depend on the common-law rule stated, but on the interpretation of the defendant's special covenant; for if the parties, by their contract, intended that the stalls or partitions should not be removed, but should remain on the property of the landlord, their removal by the defendant was tortious, and conversion will lie. The case, therefore, resolves itself into one of interpretation and construction, which must depend upon the facts of each individual case, and the intention of the parties as shown by their contract. French v. Mayor, etc., of New York, 29 Barb. 363, 16 How. Prac. 220, was an action by a lessee to recover the value of gas pipes, doors, and other personal property alleged to have been converted by the defendant (the lessor). The lessees covenanted that on the last day of the term they would surrender the demised premises, and "all the improvements" placed thereon by them, which improvements should belong to the lessors, and should be surrendered in as good state and condition as reasonable use and wear thereof would permit, damages by the elements excepted. The plaintiff got a verdict, which was set aside on appeal, and in construing the covenant the court said:

"The terms of the lease are, therefore, very broad, and would seem to comprehend all and every erection, improvement, or addition made, put, or erected upon said premises during the continuance of the lease. It was manifestly in contemplation of the parties to the lease, at the time of making it, that extensive improvements, changes, or alterations were to be made by the lessees to adapt the demised premises to such uses and purposes as they might wish to put them to, and that these alterations and improvements were to be made at the expense of the lessees. The lessors consented to such alterations and improvements, on condition that at the expiration of the lease they were to belong to and become the property of the lessors; and the lessees agreed, in consideration of such permission to make alterations, repairs, and improvements, on the expiration of the lease to surrender them up in as good state and condition as reasonable use and wear thereof would permit. The covenant is to surrender all the improvements that may have been placed thereon. 'Improvements,' clearly, as the word is here used, embrace every addition, alteration, erection, or annexation made by the lessees during the demised term to render the premises more available and profitable or useful and convenient to them. It is a more comprehensive word than 'fixtures,' and necessarily includes it and such additions as the law may not regard as fixtures. It would be difficult to select a more comprehensive word; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded."

Where a lease contained a covenant at the expiration of the term to yield up the premises, "together with all wainscots, windows, shutters, etc., and other things which then were, or thereafter should be, thereto annexed (looking glasses and furniture excepted), and, together with all sheds and other erections, buildings, and improvements which should be erected upon said demised premises, in good repair," and an assignee of the lease removed the ordinary shop sash window, putting in its place a plate glass shop front or window, which was brought to the house completely made, and was secured in its place by wooden wedges, no screws, nails, or glue being used in fastening it to its place, and it being completely detachable as a whole by removing the wedges,—held that, though not a fixture in the ordinary sense, yet, if not a window belonging to the demised

premises, within the meaning of the covenant, it was at all events an improvement, and not legally removable. Haslett v. Burt, 18 C. B. 893. In Concert Co. v. Sperry, 9 N. Y. St. Rep. 342,—a case relied on by the defendant,—the lease of a theater provided that any and all additions, alterations, and improvements that shall or may theretofore have been made to the said premises, or any part thereof, shall be and remain a part thereof, and shall and will be surrendered and left therein at the expiration or sooner determination of the term granted, without any claim for compensation on account thereof on the part of the tenant. It appeared that one Demarest had furnished 1,010 chairs to the theater under an agreement with the lessee by which the latter was to pay one-third of the purchase price in cash and the balance in notes secured by a chattel mortgage. The lessee gave Demarest the mortgage. The latter assigned it to one of the defendants, and the assignee and the other defendant subsequently removed the chairs under their mortgage because of a default in the payment of the notes secured thereby. The plaintiff denied the defendants' right to make the removal, claiming that the chairs became the property of the plaintiff by force of the covenant contained in said lease. The court, after intimating that the covenant did not cover the chairs, though fastened to the floors by iron screws, said:

"But, if this lease is to be construed as including furniture added in this manner to the building, the right of the plaintiff to the chairs was inferior to that of the manufacturer and his assignee under the mortgage. It was the agreement of the parties to the transaction that two-thirds of the purchase price of the chairs should be secured by a chattel mortgage, to be given upon them by the purchaser. That was not only an implied, but it was in the nature of an express, condition of the sale. The purchaser was to receive and acquire the property in the chairs in no other manner, and the manufacturer and seller had the right to insist upon the performance of this condition before the tenant or the landlord would be entitled to retain the chairs in the theater."

The case was decided by the controlling feature last referred to, without alluding to French v. Mayor, etc., of New York, supra, or in any manner disagreeing with the principles determined therein. See Grosz v. Jackson, 6 Daly, 463.

After an examination of the authorities, we have concluded that the removal of the stalls or partitions by the defendant was a violation of his covenant that all improvements by him made on said premises should become the property of the landlord, and that the recovery allowed by the justice for the value of said articles must be sustained, in order to uphold the covenant and the intention of the parties as expressed in it.

The only other item allowed for was a partition which divided the store. This was on the property when the lease was made, and at all times belonged to the lessor. It was removed by a tenant of the defendant, and the latter agreed to restore it, but did not. The removal of this partition was unauthorized, and the defendant, under his covenant to surrender the premises in as good state and condition as when he received them, is required to restore the partition, or answer for its value, which was satisfactorily placed at $18. The recovery for this item must also be sustained.

No point was made as to the form of the action or to the joinder of causes of action, and these questions are therefore out of the case. Since no recovery was awarded as to the other articles said to have been removed by the defendant, the evidence relating thereto and the rulings thereon need not be considered.

The judgment must be affirmed, with costs. All concur.