Samuel M. Gold, J.
This is a motion for summary judgment dismissing the complaint in an action by the City of Rye, various villages, and others against Metropolitan Transportation Authority (hereinafter “ MTA ”), William J. Ronan as its Chairman and J. Burch McMorran as Commissioner, Department of Transportation, State of New York. Plaintiffs cross-move for summary judgment in their favor. The Town of Oyster Bay has been permitted to intervene in opposition to defendants’ motion to dismiss and has also cross-moved for judgment.
The action is one for a declaratory judgment declaring section 92 of chapter 717 of the New York Session Laws of 1967 (Public Authorities Law., § 1266, subd. 9) unconstitutional. That section authorizes MTA, upon approval by the State Superintendent of Public Works, to design, construct, maintain, operate, improve and reconstruct a highway bridge crossing Long Island Sound between a point on the north shore of Long Island between Oyster Bay and Hempstead harbor and a point on the shore line of Westchester County in the vicinity of Rye or Portchester, including approaches to such bridge. The complaint alleges that defendants MTA and Ronan have selected and defendant McMorran has approved terminal sites in Rye or its immediate vicinity and in the vicinity of Village of Bayville in the Town of Oyster Bay.
The grounds upon which plaintiffs base their attack upon the constitutionality of section 92 are: (1) .that section 5 of article X of the New York State Constitution provides that “ No public corporation [with certain exceptions not applicable here] possessing both the power to contract indebtedness and the power to collect rentals, charges, rates or fees for the services or facilities furnished or supplied by it shall hereafter be created except by special act of the legislature ”, and although the authority was created by a special act of the Legislature (L. 1965, ch. 324) with certain powers, section 92, adopted in 1967, was not enacted by a special act of the Legislature, as that term is used in the Constitution; and (2) that section 92 *934 violates section 15 of article III of the Constitution which provides that ‘ ‘ No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that .shall be expressed in «the title. ’ ’
Defendants maintain that since the authority was ‘ ‘ created ’ ’ by a special .act of «the Legislature, the subsequent amendment and enlargement of its powers so as to include the construction of bridges, could validly be accomplished legislatively without a further special act of the «Legislature.
The term ‘ ‘ special act ’ ’ as used in the Constitution has been “used as a collective term to describe both local «and private statutes, or either of them, as distinguished from general legislation * * * general laws deal with persons or things as a class while special laws deal with particular «persons or things «within a class ” (People v. New York El. R. R. Co., 70 N. Y. 327; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, p. 51). Chapter 717 of the Laws of 1967, of which section 92 is a part, is clearly not a special act of the Legislature, for, as its title expressly indicates, it deals with many subjects other than MTA, including the New York City Transit Authority, the Bridge and Tunnel Authority, the Niagara Frontier Port Authority, the powers of municipal corporations with respect to mass transportation, the powers of the Port of New York Authority, and various other matters. No claim is made by defendants that chapter 717 is a «special act of the Legislature.
The fact «that the Constitution merely requires that a public authority, such as MTA, be 11 created ” by a ¡special act of the Legislature does not necessarily indicate that, once an authority has been properly created by special act, its powers and purposes may be altered and enlarged far beyond those envisaged and intended by the Legislature by enactment of a general law dealing with many «subjects. Such «a proposition could easily lead to circumvention of the purpose and intent of ¡section 5 «of ¡article X. Thus, to take a perhaps extreme example, the Legislature, after creating by special act an authority to establish and operate water facilities, could, if defendants’ argument is adopted, validly expand, by subsequent general laws, the purposes and. powers of the authority so as to authorize it to operate a railroad, or construct and operate public health facilities. Defendants’ insistence .that the constitutional provision applies only to creation of an authority, after which its purposes and powers can be enlarged and amended by general laws, could defeat the purpose and intent of the constitutional provisions under discussion. In «the Staff Report of the Temporary State Commission on Coordination of State *935 Activities, dated March 2, 1956, the statement is made (p. 72) that the requirement of a special act gives the Legislature an opportunity to consider each proposed public authority separately. This is not so in the case of a general law, dealing with many authorities, such as chapter 717 of the Laws of 1967, which includes section 92.
Defendants’ attempt to limit the scope of section 5 of article X to the creation of a public authority and its claim that thereafter general laws may alter «and expand its purposes and powers is based upon the literal language of the section, which, it is true, refers only to the creation of such an authority. That such a literal construction is not necessarily correct is clear from the opinion of the Court of Appeals in Abell v. Clarkson (237 N. Y. 85). The Constitution prohibited private or local bills incorporating villages and required general laws providing therefor. A village organized under the Village Law, a general law, attempted to annex some neighboring territory. Because the proceedings to do so proved defective, the Legislature passed an act providing for the inclusion of the territory in the village and ratifying the prior proceedings. The Court of Appeals (p. 87) used the following language, which is apposite here: “ Should a .strict construction be given to the Constitution, all that was forbidden was the original incorporation of a village by a special act — not the subsequent alteration of its charter. In like manner section 1 of article 8 might be held to apply only to the original creation of corporations. To do so, however, would destroy the entire meaning and spirit of these provisions * * * If the day after a village is incorporated the legislature may under the guise of an amendment • alter its charter by a special act this purpose is frustrated. The prohibition must in reason cover not only the original incorporation but the subsequent existence of villages.”
The question remains whether the alterations in the purposes and powers of MTA are substantial enough to require a holding that they could not be validly enacted except by a further special act of the Legislature.
MTA was created by chapter 324 of the Laws of 1965. The legislative findings and declaration of purpose which formed the foundation of the enactment stated that (1) efficient and adequate transportation of commuters within the New York metropolitan area is of vital importance; (2) the continued deterioration of the Long Island Bail Road, the New York, New Haven and Hartford Railroad and other companies providing rail commuter transportation services is a threat to the State’s economic well-being; (3) this deterioration of rail *936 commuter service has continued despite the State’s actions to provide modern car equipment, tax relief and 'Station maintenance; (4) the Federal Government and the State and local governments have spent billions of dollars in recent years to provide limited access highways and the diminution or discontinuance of rail commuter transportation would necessitate even greater expenditures for highways at great expense and great inconvenience to the commuters; (5) the provision of adequate commuter facilities must be assured; (6) the need can be met by the creation of a public authority; (7) through such public authority the State could deal flexibly with the different financial, managerial and operational problems involved in insuring the continuation of such essential commuter ¡services as .those presently provided by the Long Island Rail Road and the New York, New Haven and Hartford Railroad; and (8) it is declared to be the policy of the State to preserve, strengthen and improve commuter services.
It is to be noted that these findings and declarations refer only to “ commuter ” transportation and contain no references whatever to highways or bridges except the statement in subdivision 4 that governments at all levels have incurred large expenses to provide limited access highways and that even greater expenses would be necessary if commuter railroad services were diminished or discontinued. No one reading these declarations and fundings could reasonably conclude that the Legislature contemplated that the authority it was creating would be authorized to construct highways or bridges for mass transportation of persons driving their own cars or other vehicles.
Various provisions of the act itself tend to confirm this conclusion. The original title was Metropolitan Commuter Transportation Authority. The word “ commuter ”, as subsequent provisions of the act indicate, was used in the sense of one who comes into the city and leaves it regularly by train, omnibus, boat or plane, and was not employed in a sense broad enough to include persons using their own cars, bicycles or other vehicles. The definition of “ authority facilities ” in subdivision 2 of section 1261 was limited originally to “ the authority’s railroad, omnibus, marine and aviation facilities and operations pursuant to joint service arrangements The term “joint service arrangements” was defined in subdivision 7 of the same section to refer to agreements relating to transportation “ upon railroad, omnibus, marine or aviation facilities”. The term ‘ ‘ transportation facility” was defined in subdivision 14 to mean railroads, omnibuses, marine and *937 aviation facilities, and persons or firms leasing or operating such facilities in transporting passengers, mail or personalty “ as a common carrier (Emphasis supplied.) No definition in any subdivision of section 1261 made any reference to private persons or firms driving autos, wagons, bicycles or other vehicles.
Section 1264, entitled “ Purposes of the authority ”, as originally enacted, stated that the purposes of the authority “ shall be the continuance, further development and improvement of commuter transportation and other services related thereto * * * including but not limited to such transportation by railroad, omnibus, marine and air ”. The second sentence of subdivision 1, which gives as a ‘ ‘ further purpose ’ ’ the development and implementation “ of a unified mass transportation policy ’ ’ was not in the original act of creation, but was added by chapter 717 of the Laws of 1967.
This court is of the opinion that .the 1965 act, creating the authority, envisaged and contemplated that its purposes and powers would be limited to “ commuter ” transportation by railroad, omnibus, marine and aviation facilities. The words in section 1264 1 ‘ but not limited to such transportation ’ ’ were a mere catch-all intended to cover possible other similar carriers which might not have been thought of, but were not designed to give the authority the power and jurisdiction to control and regulate mass transportation including private automobiles and other vehicles, and to build highways and bridges in connection with the improvement of mass transportation.
That the 1967 law amended the 1965 special act by eliminating the word ‘ ‘ commuter ’ ’ from the name of the authority and that it was found necessary to make a new addition to section 1264, providing that it shall be “ the further purpose of the authority * * * to develop and implement a unified mass transportation policy ” (emphasis supplied) constitute strong indications that the 1965 act had not contemplated giving the authority jurisdiction and power over mass transportation and authorizing it to construct bridges and highways in furtherance of mass transportation. The fact that it was also found necessary to amend (Public Authorities Law, § 1266, subd. 9) the definition of ‘1 transportation facility ’ ’ to include the bridge from Rye to Oyster Bay and its approaches constitutes further confirmation that the 1965 act had not contemplated that the authority would have the power to construct bridges for mass transportation.
This court is of the opinion that the transformation or expansion of the authority from one designed to improve the trans *938 portation of ‘ ‘ -commuters ’ ’ by railroads and other common carriers to one also authorized to improve “ mass transportation ” and build bridges and highways was of such a substantial nature as to require a special act of the Legislature to authorize it and that it could not validly be accomplished by a general law dealing with many -authorities and with numerous other -subjects. It is accordingly held that section 92 is unconstitutional.
In view -of the conclusion reached, it is unnecessary to consider the other grounds upon which plaintiffs attack the validity of section 92.
The Town -of Oyster Bay, which has been allowed to intervene, also attacks the validity of -section 93 of chapter 717, which amends -the Highway Law. This is not an issue raised by plaintiffs in this action and is not properly before this court in the present action. An intervener -should not be permitted to raise issues n-ot involved in the action. Furthermore, if section 92 is unconstitutional, it is doubtful that section 93 will be availed -of by the authority, since it deals with an expressway link to the proposed bridge.
Defendants’ motion to dismiss is denied. Plaintiffs’ cross motion is granted as to the second cause of action and denied, but without prejudice, as to the first cause of action. The intervenor’s cross motion for summary judgment is granted as to the second cause of action pleaded in its complaint and is denied, but without prejudice, as to the remaining causes of -action pleaded by it.