EAST SIDE CAR WASH, INC., Appellant, v K.R.K. CAPITOL, INC., Respondent, and GETTY REFINING AND MARKETING COMPANY, Intervenor-Respondent.

First Department, June 12, 1984

##### APPEARANCES OF COUNSEL

*Michael P. Zweig* of counsel (*Jill E. Newfield* with him on the brief; *Hess Segall Guterman Pelz Steiner & Barovick,* attorneys), for appellant.

*Frederick S. Gold* of counsel (*Marybeth C. Sullivan* with him on the brief; *Schupak Rosenfeld Fischbein Bernstein & Tannenhauser,* attorneys), for respondent.

*George A. Burrell, P. C.,* for intervenor-respondent.

##### OPINION OF THE COURT

ASCH, J.

Since May, 1982, plaintiff East Side Car Wash, Inc., has operated a car wash, parking lot and gasoline station at

1770 First Avenue in Manhattan, as the sublessee of said premises, with the sublease running into the year 2010. The sublease was assigned to plaintiff with the consent of sublessor defendant K.R.K. Capitol, Inc. K.R.K. Capitol, Inc., was not the original sublessor either, but rather obtained its lease before 1980 through assignment from Natele Holding Corp. The owner of the premises is CW 62 Corp.

After obtaining assignment of the sublease, East Side Car Wash entered into a letter agreement with sublessor K.R.K. in January, 1982, modifying the sublease. Among the terms of that modification were that "the service station premises shall at all times bear the brand and colors of a major branded supplier; however, the brand may be changed by you from time to time" and that "[a] violation, breach and/or default by you of any of the terms and conditions of your dealer agreement * * * including but not limited to commingling, non-payment, insolvency, and misconduct, shall terminate this agreement." East Side Car Wash did *not* obtain its predecessor's interest in the Getty dealer agreement but it did continue to display Getty signs and logos.

On September 7, 1983, Getty notified East Side Car Wash that it was terminating whatever relationship it had with the station, effective December 12, 1983. On September 30, 1983, sublessee plaintiff East Side Car Wash received a mailgram from sublessor K.R.K. stating that it was in material breach of the lease on five grounds: failure to purchase or sell brand gasoline; violation of Getty trademark and dealer agreements by commingling and selling unbranded gasoline as Getty gasoline; unlawfully assigning and/or subletting the premises; making modifications to the premises without consent; and failure to obtain proper governmental permits; and that unless the defaults were cured within 10 days, the sublease would terminate at that time.

East Side Car Wash commenced this action against K.R.K. on October 7, 1983, seeking a declaratory judgment that it had not breached the sublease, as modified, and for an injunction against defendant K.R.K., barring it from instituting or prosecuting any action or proceeding or

taking any steps to terminate the sublease or plaintiff's right of possession. In this complaint, East Side Car Wash also alleged that the 10-day notice, unsubscribed and sent by neither registered nor certified mail, did not comply with New York law; that the sublease provided for arbitration of all disputes thereunder; and that it had fully performed its obligations under the sublease. East Side Car Wash obtained an order to show cause, signed and filed October 7, 1983, which tolled the running of the 10-day period to cure, pursuant to *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630).

Special Term (Gammerman, J.), granted a preliminary injunction tolling the running of the 10-day period to cure, in an order entered on November 21, 1983, but only on several conditions, including primarily one that unless East Side Car Wash reached an agreement with Getty within two weeks of the entry of the preliminary injunction order, East Side Car Wash "shall consent to permitting Getty to enter upon the leased premises and to remove its logo, signs *and related equipment* as to which it is determined that Getty is entitled" (emphasis added).

Getty and East Side then entered into negotiations as to the sale of certain equipment, such as lights, poles, compressors and pumps, but Getty refused to discuss a dealer relationship with East Side and insisted upon the return of its signs and logos and of 10 underground 550-gallon gasoline storage tanks, on the basis that they were old, posed an environmental danger and presented Getty with a potential source of liability, even if title were passed to East Side Car Wash.

East Side commenced a second declaratory judgment and injunction action as to the ownership of the underground tanks, by service of a summons upon Getty some time between December 21 and December 28, 1983. Also named as parties to that action were K.R.K. Capitol, Inc., as sublessor, and CW 62 Corp., as the owner. In the follow-up complaint, East Side Car Wash alleged that the underground tanks were fixtures and were part of the realty leased to it.

On December 23, 1983, Getty removed its signs and logos from the station and moved to intervene in the first

declaratory judgment action between East Side and K.R.K. pertaining only to breach of the sublease, and for an order upon such intervention to authorize Getty to enter the premises and remove all of its equipment, including the 10 underground tanks.

Special Term granted Getty's motion to intervene in this action and upon such intervention granted Getty's motion for an order of seizure pursuant to CPLR 7102, directing that it be given possession of certain chattel property, including the 10 underground 550-gallon gasoline tanks. Such action was improvidently taken by Special Term.

Initially, we note that intervention was erroneously granted. Although the sublease dispute between plaintiff and defendant does involve East Side's breach of its relationship (if any) with Getty, the issues of whether the underground tanks are fixtures or chattels and whether Getty owns said tanks even if they are chattels are neither relevant nor material to the resolution of the issues posed in the instant "sublease" action. A proposed intervenor is not permitted to raise issues which are not before the court in the main action (see *City of Rye v Metropolitan Transp. Auth.,* 58 Misc 2d 932, revd on other grounds 24 NY2d 627; *McGee v Horvat,* 23 AD2d 271). Getty seeks to do precisely this by injecting itself in the midst of a landlord-tenant dispute when there is another action pending which directly addresses the subject matter of Getty's proposed replevin action.

Getty's reliance upon the language in the order of Justice Gammerman concerning the removal of "logos, signs and related equipment" as the basis for its claim that the ownership question vis-à-vis the tanks was already decided in the instant action is misplaced. East Side did not consent to their removal and this interpretation of the language urged by Getty is not persuasive. The phrase "related equipment" obviously refers only to the limited class of property subsumed under "logos" and "signs", and does not include the underground tanks (*Matter of Falvey,* 15 AD2d 415, affd 12 NY2d 759).

Special Term was also in error in granting Getty's motion for an order of seizure of the tanks. Pursuant to CPLR 7101: "An action under this article may be brought to try

the right to possession of a chattel." Replevin, or as it is now known, seizure of the subject property, is a procedure in the nature of a provisional remedy which may be used as an incident to an action to recover a chattel (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7101:1 *et seq.,* pp 170-172). "An action under Article 71 lies only to recover chattels" (*id.,* CPLR C7101:2, at p 171).

CPLR 7102 governs the procedure to be followed for the provisional seizure of the subject chattel. The movant must establish the probability of success on the merits and such application may be defeated by a showing of a good-faith defense to movant's claim (*Morning Glory Media v Enright,* 100 Misc 2d 872). Here, East Side Car Wash asserted just such a good-faith defense, asserting that the underground tanks are fixtures, not chattels, and therefore may not be replevied (see *Walden v Feller,* 99 Misc 576; McLaughlin, Practice Commentaries, *op. cit.,* p 171). In New York, there are three criteria which have been used to determine whether property is a fixture. The first is the permanence with which the property has been annexed to the realty. The second is the adaptability of the fixture to the use to which the real property is being put. Third, is the intent of the parties at the time of the annexation (*Voorhees v McGinnis,* 48 NY 278).

The underground tanks herein are installed several feet below ground and are encased in concrete. To remove them would probably result in their destruction as well as suspend plaintiff's business. Insofar as their adaptability to the leased premises is concerned, the premises were leased as a gasoline station and gasoline storage tanks are a prerequisite to operating a gas station. Although Getty placed its overriding emphasis on the intent of the parties, its evidence submitted at nisi prius on the motion was insufficient if judged by the standards applicable on a summary judgment motion (Special Term deemed a motion for an order of seizure as "comparable to a motion for summary judgment"). Likewise, the proof submitted did not provide an adequate evidentiary basis upon which to grant an order of seizure (see McLaughlin, Practice Commentaries, *op. cit.,* C7102:1 *et seq.,* pp 182-189).

No competent evidence was submitted by Getty as to the date of the original installation nor of the intent of the parties at that time. As noted, the intent *at the time of the annexation* of the property to the real estate governs (*Voorhees v McGinnis, supra;* 23 NY Jur, Fixtures, § 7). Getty did not install the tanks and presented no evidence that the intent of the annexing party was for the tanks to be treated as personalty.

Getty's contention that the underground tanks were part of the class of "trade fixtures" and thus did not become permanently annexed to the realty is without merit. Trade fixtures are fixtures installed by a tenant during its lease term to carry on its business. They are the fixtures which the lessee has supplied at its own expense and has the right under the lease to remove (*Marraro v State of New York,* 12 NY2d 285). Getty did not install the tanks in question and was never a tenant in the premises. The lease for the property did not identify the tanks as trade fixtures.

Although underground gasoline tanks have been previously treated as fixtures (see *Sunnybrook Realty Co. v State of New York,* 15 Misc 2d 739, mod on other grounds 11 AD2d 888, affd 9 NY2d 960), we do not now decide that issue, which is the subject of the other declaratory action brought by plaintiff. However, it is clear, in view of the foregoing, that Getty failed upon the motion herein to sustain its burden of showing the probability of its success on the merits (CPLR 7102, subd [d], par 1).

Accordingly, the order of the Supreme Court, New York County (McCooe, J.), entered February 16, 1984, which granted Getty Refining and Marketing Company's motion to intervene in this action and thereupon granted the proposed intervenor's motion for an order of seizure, should be reversed, on the law and the facts, without costs, and the motion by the proposed intervenor denied in its entirety.

SANDLER, J. P., SILVERMAN, BLOOM and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on February 16, 1984, unanimously reversed, on the law and the facts, without costs and without disbursements, and the motion by the proposed intervenor denied in its entirety.