**SHELL OIL COMPANY, Plaintiff,**

v.

**Albert U. CAPPARELLI, Defendant.**

**No. 85 Civ. 6377 (CHT).**

United States District Court,
S.D. New York.

July 28, 1986.

James L. Michalak, Houston, Tex. (Louis A. Scarcella, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, of counsel), for plaintiff.

Shamberg Marwell Cherneff & Hocherman, P.C., Mt. Kisco, N.Y. (Stuart R. Shamberg and Marianne L. Sussman, of counsel), for defendant.

TENNEY, District Judge.

In this diversity action, the plaintiff, Shell Oil Company ("Shell"), is seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, stating that Shell is entitled to recover the oil storage tanks that Shell installed at the automobile service station presently owned by the defendant, Albert U. Capparelli ("Capparelli").[1] Shell contends that it has the right to remove the tanks from the premises pursuant to the terms of a 1958 lease ("Lease") between Shell and the individual who owned the service station in 1958. Capparelli argues that Shell has no right to remove the tanks because (1) the 1958 Lease is no longer in effect, or (2) if the Lease is in effect, the tanks constitute an "improvement" to the property and therefore belong to Capparelli pursuant to the terms of the Lease.

Both parties now move for summary judgment. For the reasons set forth below, the Court concludes that the terms of the Lease govern and the tanks are equipment that belong to Shell. Accordingly, the plaintiff's motion for summary judgment in its favor is granted to the extent set forth below, and the defendant is enjoined from interfering with Shell's removal of the tanks at issue.

## BACKGROUND

The facts in the case at bar are not in dispute, and a brief outline of the background will suffice. In 1958, Shell entered into a leasing agreement with Benjamin DiNapoli, ("DiNapoli") whereby Shell leased DiNapoli's service station which was located at Main Street and Fishkill Avenue in Beacon, New York.[2] In 1965, DiNapoli assigned the Lease to Joseph A. Gallagher ("Gallagher"), with Shell's consent,[3] and in 1967, Gallagher purchased the premises.

In 1983, Shell sent Gallagher a letter, stating that the Lease would be terminated in 1984. Shell subsequently attempted to remove the gasoline storage tanks, in February and in March of 1984, but Gallagher would not permit Shell to do so.

In March 1984, Gallagher filed a petition under Chapter 7 of the Bankruptcy Code, and in August 1984, the defendant, Capparelli, purchased the premises at a New York State mortgage foreclosure sale, with the permission of the Bankruptcy Court. After purchasing the premises, Capparelli refused to allow Shell to remove the gasoline storage tanks at issue here, and this action ensued.

## DISCUSSION

Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. ("Rule") 56(c); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (1980). In this instance, there is no dispute concerning the facts, and both parties have moved for summary judgment. The case centers on the question of whether the

1. Shell is also seeking compensatory and punitive damages based on its claims of conversion and interference with the performance of a lease and interference with Shell's business relations. In addition, Shell is seeking to recover costs and attorneys' fees.

2. The Lease actually involved a two-pronged transaction: (1) Shell leased the premises; and (2) Shell sublet the premises back to DiNapoli and Joseph Salicco, to be operated as a Shell service station. The second part of the transac-

tion, involving the subletting of the premises, is not at issue here, and references to Shell as the tenant are based on Shell's having leased the premises from DiNapoli.

3. In 1967, Gallagher and Shell entered into a petroleum franchise relationship, under which Gallagher used Shell's trade name, trademarks and insignia in the sale of gasoline and other petroleum products. Shell terminated the franchise relationship with Gallagher in 1983.

tanks belong to Shell or whether they belong to Capparelli.

### 1. *The 1958 Lease*

■ Shell contends that it owns the tanks pursuant to the terms of the 1958 Lease. In order to reach that issue, however, the Court must first determine whether or not Capparelli is bound by the terms of the Lease. The Court concludes that he is so bound.

The Lease provided for a primary term of 15 years—1958 to 1973—together with an option to extend the term for one additional period of five years. The Lease also provided that it would be automatically renewed on a yearly basis unless one of the parties acted to cancel the Lease.[4] It is clear from the record that no action was taken to terminate the Lease before 1984, when Shell sent Gallagher a letter terminating it.

When Capparelli purchased the subject premises in 1984 at the mortgage foreclosure sale, the Bankruptcy Court set forth the terms and conditions of the sale in a document entitled "Terms of Sale," which was signed by Capparelli. That document provided that the premises were sold subject to the terms and conditions

contained in the 1967 deed, which transferred ownership of the premises from DiNapoli to Gallagher.[5] Thus, Capparelli's rights in the premises, and the storage tanks located on the premises, were limited by the terms of the 1967 deed.

The 1967 deed stated that the premises were conveyed subject to any rights that Shell had under the 1958 Lease.[6] As previously noted, that lease provided for its automatic yearly renewal unless one of the parties acted to terminate it, which they did not do.[7]

Thus, the terms of the 1958 Lease were carried forward to the present day: the 1967 deed provided that Gallagher's ownership of the premises was subject to the terms of the 1958 Lease, and the document entitled "Terms of Sale" specified that Capparelli purchased the premises subject to the terms of the 1967 deed. Capparelli is therefore bound by the terms of the 1958 Lease.[8]

### 2. *The Terms of the Lease*

The Lease provides that any equipment installed on the premises by Shell, remains Shell's property, and Shell has the right to remove that equipment when the Lease

---

**4.** Specifically the 1958 Lease states:
   At the end of the original term or of any extension period, if Shell does not exercise its then-current option to extend, the term shall be automatically extended from year to year, on the same covenants and conditions as herein provided ... until either Lessor or Shell terminates this lease....

**5.** Paragraph 8 of the 1984 document, which was entitled Terms of Sale, states:
   The premises are sold subject to the terms and conditions, if any, contained in a certain deed bearing date the 15th day of March, 1967, from Benjamin DiNapoli to James A. Gallagher....

**6.** The 1967 Deed states in relevant part:
   The premises are conveyed subject to the rights, if any, of the Shell Oil Company in and to the premises under a written lease dated April 22, 1958 between Benjamin DiNapoli and Shell Oil Company.

**7.** The defendant also argues that he did not have notice of the terms of the 1958 Lease, because the Lease was not filed with the county clerk's

office. A Memorandum of Lease ("Memorandum"), however, was recorded with the Dutchess County Clerk's Office, which constituted public notice of the Lease. Moreover, the Memorandum incorporated all of the provisions of the Lease, thereby giving the public satisfactory notice that the Lease itself should be examined. The Memorandum stated:
   Lessor has leased and hereby leases to Shell the following described premises ... subject to all the ... covenants and conditions of the Lease between Lessor and Shell of even date herewith, which is by this reference incorporated herein and made a part hereof.

**8.** Capparelli also asserts that even though he bought the premises subject to the terms of the 1967 deed—and therefore subject to the terms of the 1958 Lease—Shell's rights in the premises and the storage tanks were forfeited, extinguished, or terminated prior to his purchasing the premises. When Capparelli purchased the premises, however, he obtained only the same property rights that Gallagher had. Shell's rights, therefore, are the same as they were when Gallagher owned the premises.

terminates. Shell argues that the storage tanks are equipment and that the tanks are therefore Shell's property and removable.[9]

The Lease, however, also provides that any buildings or improvements placed or installed on the premises become the property of the landlord.[10] The defendant argues that because the storage tanks are installed in the ground and covered with concrete they are permanently affixed to the property and have become part of the real estate. The defendant argues that the tanks must therefore be considered improvements to the premises. The plaintiff responds that the tanks are trade fixtures which, under New York law, are removable regardless of how they are affixed to the property. The Court agrees with the plaintiff.

■ Trade fixtures have been defined as property installed by a tenant at his own expense, during the term of the lease, to carry on the business for which the realty was leased. *See East Side Car Wash v. K.R.K. Capitol, Inc.,* 102 A.D.2d 157, 476 N.Y.S.2d 837, 840 (1st Dept.1984); *Foureal Co. v. National Molding Corp.,* 74 Misc.2d 316, 344 N.Y.S.2d 598, 601 (Dist.Ct.1973). If the property at issue is a trade fixture, the tenant has the right to remove that property, even if it is affixed to the related realty. *See East Side Car Wash,* 476 N.Y. S.2d at 840; *Crater's Wharf v. Valvoline Oil Co.,* 204 A.D.616, 196 N.Y.S. 815, 816 (2d Dept.1922). *See also Interstate Lien Corp. v. Schmidt,* 180 Misc. 910, 44 N.Y. S.2d 709, 711 (N.Y.Co.Ct.1943) ("[A] tenant may take away whatever he erects for the

purpose of carrying on trade, whether it be machinery or buildings, even though affixed to the soil or freehold....").

■ In the instant case, it is undisputed that the storage tanks at issue here were installed by Shell, as tenant, during the term of the lease. It is evident from the record that the storage tanks were installed solely for the purpose of furthering Shell's business. Thus, the tanks must be considered to be trade fixtures—or equipment—rather than being considered a permanent part of the real estate or an improvement to the premises.[11]

■ Under New York law there is a presumption that " '[u]nless a contrary intention is expressed, ... where installations are made for the purposes of conducting the business for which premises are leased, such installations are not permanent annexations to the freehold, but are made for the sole use and enjoyment of the tenant during the term of his lease....' " *Flah's of Syracuse, Inc. v. Tully,* 89 A.D.2d 729, 453 N.Y.S.2d 855, 857 (3rd Dept.1982) (quoting *Matter of 100 Park Ave. v. Boyland,* 144 N.Y.S.2d 88, 93 (N.Y. Sup.1953), *aff'd,* 309 N.Y. 685 (1955). In the instant case, the defendant has failed to overcome this legal presumption.

There is no evidence in the record that the parties to the 1958 Lease intended the storage tanks to become permanent annexations to the realty. Quite to the contrary, the record indicates that the tanks were installed by Shell for its own particular needs in connection with the business

---

9. Paragraph 13 of the Lease provides in relevant part:

All equipment installed or placed on the premises by Shell or acquired by Shell at any time during the term of this or any previous lease or any extension thereof or any tenancy thereafter, shall be and remain Shell's property, and Shell shall have the right to remove any or all from the premises.... All buildings, improvements and other property constructed, installed or placed on the premises by Shell or acquired by Shell, at any time during the term of this or any previous lease or any extension thereof or any tenancy thereafter shall be and remain Lessor's [DiNapoli] property.

10. *See supra* footnote 8.

11. *See Ilderton Oil Co. v. Riggs,* 13 N.C.App. 547, 186 S.E.2d 691, 693 (N.C.Ct.App.1972) (The court held that underground storage tanks, pumps, and accessory equipment were trade fixtures, installed for purposes connected with the tenant's business, which could be removed by the tenant.); *First National Bank of McAdoo v. Reese,* 356 Pa. 175, 51 A.2d 806, 808 (Pa.1947) (same); *Standard Oil Co. v. LaCrosse Super Auto Service,* 217 Wis. 237, 258 N.W. 791, 794 (Wis.1935) (same).

which was to be conducted upon the leased premises and that the parties to the 1958 Lease intended the tanks to remain Shell's property.

In support of its motion for summary judgment, Shell has submitted the affidavit of H.H. Hewitt, one of its Territory Managers, who states that it has been Shell's business practice, for at least thirty years, "to treat underground gasoline storage tanks as removable equipment, if installed, acquired or placed on automobile service station premises by Shell." *See* Hewitt's Aff. at ¶ 8. In light of this practice, it is reasonable to conclude that when Shell leased the premises in 1958, it intended to retain ownership of any storage tanks that it installed on the subject premises.[12]

Furthermore, Gallagher—who purchased the property from the original lessor—also considered the storage tanks at issue here to be Shell's property. In 1971, both Shell and Gallagher signed a "Property Verification Agreement" which identified the property on the subject premises that belonged to Shell. The underground storage tanks were included in the list of Shell's property. *See* Exhibit 12. It should also be noted that in 1983, Shell agreed to sell to Gallagher any equipment owned by Shell that was on the subject premises. The storage tanks were part of the property that Shell agreed to sell to Gallagher. *See* Hewitt's Aff. at ¶ 11. Although that sale was not executed, the fact that Shell and Gallagher initially agreed to such a sale indicates that both parties considered the storage tanks to be Shell's property.

The defendant has failed to submit any evidence to support his argument that the storage tanks are not removable. The defendant merely points to the fact that the tanks are installed in the ground and covered with concrete. As previously indicated, however, the fact that the tanks are affixed to the realty is not enough, by itself, to prove that the tanks were installed in order to improve the subject premises, rather than being installed for use as trade fixtures.[13]

For the reasons set forth above, the Court concludes that Shell is entitled to remove the storage tanks at issue here from the subject premises. Accordingly, the plaintiff's motion for summary judgment in its favor is granted and the defendant's motion for summary judgment is denied. The defendant is hereby enjoined from interfering with Shell's removal of the tanks. The plaintiff's request for compensatory and punitive damages is denied. The plaintiff's request for costs and attorneys' fees is also denied.

So ordered.

---

**12.** *See Mandelbaum v. Shell Oil Co.,* 500 F.Supp. 446, 447 (E.D.N.Y.1980) (The court held that it did not constitute waste for Shell to remove underground oil storage tanks which it had installed. Although the status of the tanks was not at issue, the court identified the tanks as being Shell's equipment.).

**13.** *See Matter of the City of New York,* 192 N.Y. 296, 301 (1908) ("The placing of machinery or other appliance by the Tenant upon the leased premises for the purpose of trade or manufacture to be carried on by the tenant does not make the property so affixed a part of the freehold, [rather] it still remains personalty to such an extent at least that the tenant retains the right to remove it....").