**In re ARISTA DEVICES CORP., Debtor.**

**ARISTA DEVICES CORP., Appellant,**

v.

**DEAM ASSOCIATES, Appellee.**

**No. CV 87–3250.**

United States District Court,
E.D. New York.

Dec. 6, 1988.

Schwartz, Sachs & Kamhi, P.C., Carle Place, N.Y., for debtor-appellant.

Reisman, Peirez, Reisman & Calica, Garden City, N.Y., for defendant-appellee.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

This matter is before the Court on debtor Arista Devices Corp.'s ("Arista") appeal of judgment entered after trial pursuant to an opinion and order of United States Bankruptcy Judge Cecilia H. Goetz, which held that Arista was not entitled to the return of certain improvements that it had installed in a building owned by Deam Associates ("Deam"). For the reasons stated below, the judgment of the Bankruptcy Court is reversed.

### FACTS

The pertinent facts are not in dispute. On December 20, 1984, Deam leased the premises located at 900 Marconi Avenue, Ronkonkoma, New York, to John Tringali, Inc. ("Tringali") for a five year term commencing on December 20, 1984. Tringali immediately assigned the lease to Arista. Several provisions of the standard form lease addressed the rights and obligations of the parties in the event that the lessee desired to make improvements to the leased premises. Those provisions included:

> Third. That the Tenant will not disfigure or deface any part of the building, or suffer the same to be done, except so far as may be necessary to affix such trade fixtures as are herein consented to by the landlord; the Tenant will not ... make any alterations in the demised premises ... No water cooler, air conditioning unit or system or other apparatus shall be installed or used without the prior written consent of the landlord.

> Eleventh. All improvements made by the Tenant to or upon the demised premises, except said trade fixtures, shall when made at once be deemed to be

attached to the freehold and become the property of the Landlord and at the end or other expiration of the term shall be surrendered to the Landlord in as good order and condition as they were when installed, reasonable wear and damage by the elements excepted.

Furthermore, a rider to the lease provided:

5) All permanent improvements made by the tenant shall be maintained at the cost and expense of the tenant. However, at the termination of this lease all of said improvements shall remain and become the property of the Landlord. Tenant shall be permitted to make any alterations necessary its [sic] business upon approval of Landlord which approval shall not unreasonably withheld [sic].

16) In the event of any inconsistency between the provisions of this rider and the provisions of the printed form of this lease, the provisions of this rider shall prevail.[1]

Arista is a manufacturer of electronic components, most of which are produced pursuant to military contracts. Its primary product is a printed circuit board, the production of which requires a controlled environment since excessive humidity can cause defects. When Arista initially accepted assignment of the lease, the manufacturing area made up approximately 6,000 of the building's 8,000 square feet and was ventilated only by ceiling fans.

In order to obtain a controlled environment in the manufacturing area, Arista made a written request pursuant to paragraph 5 of the rider to install a central air conditioning system. Arista also requested permission to construct a mezzanine for a cafeteria and storage area, and to make other alterations, including the erection of several interior walls for the creation of new offices.

Following Deam's consent to the request, Arista purchased the mezzanine for $3,256.51, and later assembled and installed it. Arista also contracted with Master En-

vironment Business Corp. ("Mebco") for the purchase and installation of a central air conditioning system. The system, which cost $39,150.00, consists of three freon compressors and breaker switches, along with a separate control panel attached to an interior wall. Pipes and wiring run through the walls to condensors, which were attached to ducts that circulate air inside the building.

In connection with the Mebco work, an Arista officer signed—but, the Bankruptcy Court found, did not read—a "Certificate of Capital Improvement" prepared by Mebco certifying that the air conditioning and electrical work being done met the requirements of a "capital improvement" within the meaning of the New York Tax Law and the New York State Sales Tax Regulations. Those regulations provide that an improvement is deemed a capital improvement if it:

i) substantially adds to the value of the real property, and

ii) becomes part of the real property or is permanently affixed to the real property so that removal would cause material damage to the property or article itself, and

iii) is intended to become a permanent installation.

On December 31, 1986, Arista filed for relief pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* On February 20, 1987, Deam applied for an order rejecting the unexpired portion of its lease. At a hearing before the Bankruptcy Court on February 25, 1987, the Court declared the lease rejected. On April 7, 1987, Arista commenced a turnover proceeding seeking return of the air conditioning system and mezzanine. Following a two-day trial on June 17 and 24, 1987, the Bankruptcy Court, without the benefit of pre-trial or post-trial submissions by the parties, issued a detailed opinion holding that Arista was not entitled to the return of the air conditioning system and the mezzanine.

---

**1.** As a review of these provisions makes clear, the lease at issue is hardly a model of clarity or consistency, with its interchangeable use, without definition, of the phrases "trade fixtures," "improvements," "permanent improvements," "alterations", and "alterations necessary [for the tenant's] business."

In its opinion, the Court determined that paragraph 5 of the rider governed. Because that paragraph drew no distinction "between trade fixtures and any other permanent improvement," the Court concluded that "[t]he test of Arista's right to the air conditioning system and the mezzanine is not, therefore, whether or not they are 'trade fixtures,' but whether they are 'permanent improvements.'" The Court then found that, notwithstanding its factual determination that the air conditioning and mezzanine were installed for the purposes of Arista's business and that their removal would cause no substantial damage to the leasehold, those items, along with the other renovations, constituted improvements that "were of the type generally undertaken as permanent alterations." The Court also reasoned that even if the items were not the property of the landlord under Paragraph 5 of the rider, they were forfeited under Paragraph 4, which provided that a failure of the tenant upon expiration of the lease to remove its property from the leasehold would result in the property being deemed abandoned.[2] Finally, the Court reasoned that the removal of the air conditioning and mezzanine, but not the interior walls, would adversely affect the ability to use the building as altered because the interior offices would lack adequate ventilation. This appeal followed.

DISCUSSION

Arista argues first that the Bankruptcy Court improperly included trade fixtures within the definition of permanent improvements. Arista contends that the two terms are mutually exclusive and thus because the items were trade fixtures, they should not be deemed permanent improvements and therefore should be returned. Deam argues that the Bankruptcy Court properly characterized the air conditioning system and the mezzanine as permanent improvements and that it is irrelevant whether they are also trade fixtures.

This Court agrees with the Bankruptcy Court that resolution of this dispute hinges on the determination whether the air conditioning and mezzanine are "permanent improvements." The Court concludes, however, that permanent improvements and trade fixtures are mutually exclusive and that the proof below demonstrated that the air conditioning and mezzanine were not permanent improvements but were trade fixtures.

Trade fixtures are fixtures, or improvements, that are placed upon or annexed to the property for the purpose of carrying on the tenant's business or trade during the lease term. *See J.K.S.P. Restaurant, Inc. v. County of Nassau,* 127 A.D.2d 121, 125, 513 N.Y.S.2d 716, 720 (2d Dep't 1987); *East Side Car Wash v. K.R.K. Capitol,* 102 A.D.2d 157, 162, 476 N.Y.S.2d 837, 840 (1st Dep't 1984); *see also Shell Oil Co. v. Capparelli,* 648 F.Supp. 1052, 1055 (S.D.N.Y.1986); J. Rasch, *New York Landlord & Tenant Summary Proceedings* § 509, at 637–38 (1971) ("Trade and domestic fixtures are those articles of personal property which a tenant annexes to the freehold for the purposes of trade or business carried on by him, or for the ornamentation of the premises, or for the convenience of his occupation"). As the New York Court of Appeals noted many years ago:

> As between landlord and tenant the placing of machinery or other appliances by the tenant upon the leased premises for the purpose of trade or manufacture to be carried on by the tenant does not make the property so affixed a part of the freehold, but it still remains personality to such an extent at least that the tenant retains the right to remove it.... The trade fixtures of a tenant in other words remain personal property in the

---

**2.** Paragraph 4 of the rider to the lease provided, in full, as follows:

> Anything herein contained to the contrary notwithstanding, if after default of any payment of rent or a violation of any other provision of this lease, or upon the expiration of this lease, the Tenant moves out or is dispossessed and fails to remove any of the property within ten days of such default, removal, expiration of lease, then and in that event, the said property shall be deemed abandoned by said tenant and shall become the property of the landlord.

eye of the law so far as the right of removal is concerned.

*Matter of City of New York*, 192 N.Y. 295, 301–02, 84 N.E. 1105 (1908) (quoting *Massachusetts Nat. Bank v. Shinn*, 18 A.D. 276, 279, 46 N.Y.S. 329, 331 (2d Dep't 1897), *aff'd*, 163 N.Y. 360, 57 N.E. 611 (1900)). Significantly, the Court also noted that in order for trade fixture status to attach, removal of the fixtures must be accomplished without substantial injury to the freehold. *Id.* The justification for the trade fixture rule is that it encourages the efficient use of the leased premises by the tenant. "Without a trade fixtures exception, tenants would be hesitant to invest in fixtures even though they would be useful during the term of the lease because the investment would be lost upon termination." 5 R. Powell, *The Law of Real Property* ¶ 653, at 57–48 (Reynolds rev. 1988).

The parties to a lease are, of course, free to override the common law rule regarding trade fixtures. *See Matter of Hyong Jin Kim*, 15 B.R. 198, 200 (S.D.N.Y.1981). *See generally* 59 N.Y.Jur.2d *Fixtures* § 18, at 630–31 (1987). Thus, a lease may provide that items ordinarily considered trade fixtures become the property of the landlord upon termination of the lease. 5 R. Powell, *The Law of Real Property, supra*, ¶ 653, at 57–48. A lease may also provide—as it does in the case at bar—that certain types of improvements to the property remain the property of the landlord, while a companion provision in the lease states that all trade fixtures may be removed by the tenant. These latter provisions, one commentator has observed, often prove troublesome when being construed, as "[t]here is obviously a problem for the courts in interpreting precisely where the line between improvements and fixtures should be placed." *Id.* at 57–51. This problem in line-drawing occurs because oftentimes no line exists; that is, trade fixtures often fit squarely within the definition of "improvements." As one very early New York case observed:

Improvements ... embrace every addition, alteration, erection or annexation made by the lessees during the demised term, to render the premises more available and profitable, or useful and convenient to them. It is a more comprehensive word than "fixtures," and necessarily includes it, and such additions as the law might not regard as fixtures. It would be difficult to select a more comprehensive word; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded.

*French v. Mayor of New York*, 29 Barb. 363, 16 How.Pr. 220, 222 (N.Y.Sup.Ct.Gen. T.N.Y. County 1859); *see Levin v. Improved Property Holding Co.*, 141 A.D. 106, 125 N.Y.S. 963 (2d Dep't 1910) (holding that certain trade fixtures were improvements and thus forfeited); *Lesser v. Rayner*, 21 Misc. 666, 47 N.Y.S. 1102 (Sup.Ct. App. Term 1897) (same). *But see Shell Oil Co. v. Capparelli*, 648 F.Supp. 1052 (S.D.N.Y.1986) (holding that certain trade fixtures were not improvements and thus removable); *Webber v. Franklin Brewing Co.*, 123 A.D. 465, 108 N.Y.S. 251 (1st Dep't 1908) (same), *aff'd*, 198 N.Y. 509, 92 N.E. 1106 (1910). *See generally* Annotation, *What Constitutes Improvements, Alterations or Additions Within Provisions of Lease Permitting or Prohibiting Tenant's Removal Thereof at Termination of Lease*, 30 A.L.R.3d 998 (1970).

■ In marked contrast to the cases where line-drawing proved nettlesome because the agreements in question provided that all improvements remain with the landlord, this case presents little difficulty in line-drawing because the lease here provides that only "permanent improvements" remain with the landlord. Permanent improvements are, by definition, improvements that the annexor intends to make an enduring part of the realty. In particular, the implication that this was contemplated can be drawn from the lease's reference to "improvements" on the one hand, and "permanent improvements" on the other. By contrast, trade fixtures are items that are annexed to or put on the realty for the purpose of the annexor's business and are thus, by operation of law, removable. Con-

sequently, they are anything but permanent. The Court's inquiry, then, is whether the air conditioning and mezzanine are permanent improvements or trade fixtures. Under New York law, this inquiry is aided by the operation of a presumption:

> The law makes a presumption in the case of anyone making [an] annexation [of chattels], and it is different as the interests of the person in the land is different, that is, whether it is temporary or permanent. The law presumes that because the interest of a tenant in the land is temporary, that he affixes for himself, with a view to his own enjoyment during his term, and not to enhance the value of the estate; hence, it permits annexations made by him to be detached during his term, if done without injury to the freehold, and in agreement with known usages.

*Tifft v. Horton,* 53 N.Y. 377, 382 (1873). *See Shell Oil Co. v. Capparelli, supra,* 648 F.Supp. at 1055 (applying presumption and finding that storage tanks were trade fixtures, not "improvements"); *cf. Flah's of Syracuse v. Tully,* 89 A.D.2d 729, 730, 453 N.Y.S.2d 855, 857 (3d Dep't 1982) (applying presumption in tax assessment). *See generally* 59 N.Y.Jur.2d *Fixtures* § 17, at 628–29 (1987) (presumption that improvements by tenants are temporary and not permanent "has particular application to trade fixtures of a tenant").

The Bankruptcy Court concluded that the mezzanine and air conditioning units were permanent improvements because they, along with the interior walls, constituted extensive alterations; because Arista requested permission to add the air conditioning, mezzanine, and inner walls pursuant to paragraph 5 of the rider to the lease; and because the removal of the air conditioning without the demolition of the interior walls would affect the ability to use the building as altered. This Court concludes that, when properly viewed in light of the presumption of trade fixture status and the factual findings made, the Bankruptcy Court's legal conclusion was erroneous. In so concluding, this Court does not violate the standard of review appropriate in this setting, because the Court has *de novo* review of conclusions of law giving improper legal significance to the facts.

First, although paragraph 5 of the rider to the lease contains the provision regarding "permanent improvements," it also contains a provision regarding "alterations necessary [for] its business." Thus, Arista's request for permission to make the improvements pursuant to that paragraph hardly should be deemed an admission by Arista that it considered the improvements to be permanent. Second, although the extensiveness of improvements made to realty certainly is one factor to be considered in making a determination whether improvements are permanent because it bears on whether removal could be effected without causing substantial damage, it is not sufficient to rebut the presumption of trade fixture status in a situation where, as here, there has been an explicit finding that removal would cause no such damage. *Cf. J.K.S.P. Restaurant Inc. v. County of Nassau, supra,* 127 A.D.2d at 127, 513 N.Y.S.2d at 721. (factors such as size foundation, and method of construction of fixture are irrelevant because in determining trade fixture status, "the sole question is whether the [item] is designed for purposes of trade, and if so designed, it is a trade fixture and is removable by the tenant irrespective of other factors"). Finally, in light of both the finding below that removal of the interior walls would cause no substantial damage, and Arista's offer to restore the premises to their original condition, the fact that the removal of the air conditioning would adversely affect the ventilation in those rooms is of little significance; restoration of the premises by removal of those walls by Arista would cure that problem. Accordingly, the proof failed to demonstrate that the air conditioning and mezzanine were "permanent improvements."[3]

---

**3.** Deam's reliance on Arista's signing of the "Capital Improvements" form as evidence of Arista's recognition of the improvements being permanent in nature is misplaced. The Bankruptcy Court specifically found that the officer who signed that form did not read it.

On the other hand, in addition to the presumption, there was quite substantial proof that the air conditioning and mezzanine were trade fixtures. For instance, the Court found that the air conditioning and mezzanine were installed for the purpose of carrying on Arista's trade. The Court also found that removal of those items, as well as the inner walls, would cause no substantial damage to the building. And, while the Court found no specific intent on the part of Arista that the items were trade fixtures and not permanent improvements, such an intent can be inferred from the Bankruptcy Court's finding that no substantial damage to the building would occur upon removal. *See* 5 R. Powell, *The Law of Real Property, supra,* ¶ 653, at 57–46 (the damage element "is in essence a factor to be considered in determining the intent of the parties"). In sum, the air conditioning and mezzanine are not permanent improvements; rather, they are trade fixtures. Thus, they should not have been deemed the property of the landlord pursuant to paragraph 5 of the rider to the lease.

■ Arista argues next that the Bankruptcy Court improperly determined that it had abandoned the air conditioning and mezzanine pursuant to the lease because, pursuant to the Bankruptcy Code, a debtor's property cannot be abandoned unless by court order. This Court agrees. Paragraph 4 of the rider to the lease provided that, if upon expiration of the lease Arista fails to remove any of its property within ten days, such property shall be deemed abandoned by Arista and shall become the property of the landlord. It is undisputed that the lease agreement was terminated by the Court on February 25, 1987, and that Arista did not remove the property by March 7, 1987. However, Arista had filed for relief pursuant to Chapter 11 on December 31, 1986, and thus was entitled to the various protections of the Code. One of those protections, 11 U.S.C. § 554, provides as follows:

**§ 554. Abandonment of Property of the estate**

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to 'the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Under this provision, property of the debtor that is not listed in its schedules [4] and not abandoned pursuant to notice and a hearing may not be abandoned except by order of the Court. Here there was neither notice and hearing nor a court order.[5] Hence, the air conditioning and mezzanine cannot be deemed abandoned by operation of law pursuant to the lease. *See* 4 *Collier on Bankruptcy* ¶ 554.03, at 554–11 (15th ed. 1988) ("Abandonment presupposes

---

4. The air conditioning and mezzanine were omitted from Arista's schedule of property filed in the Bankruptcy Court.

5. Deam's contentions that the Court ordered the property abandoned and that there was notice and a hearing are unpersuasive. The only issue determined by the Court on February 25, 1987 was the rejection of the lease; thus, the Court never formally ordered the property abandoned. Moreover, the notice and hearing contemplated by § 554 is one that affords creditors an opportunity to object. 4 *Collier on Bankruptcy* ¶ 554.02, at 554–10 (15th ed. 1988). *See* Bankruptcy Rule 6007 (debtor "*shall* give notice of a proposed abandonment or disposition of property to all creditors") (emphasis added). Here it appears that there was neither notice to the creditors that the property would be abandoned nor evidence that the abandonment issue was ever discussed at the hearing. Thus, it can hardly be argued that § 554's notice and hearing requirements were met.

knowledge. There can, as a rule, therefore, be no abandonment by mere operation of law of property that was not listed in the debtor's schedules or otherwise disclosed to the creditors").

## CONCLUSION

The judgment of the Bankruptcy Court is reversed. Arista shall be permitted to remove the air conditioning and mezzanine. In effecting such a removal, Arista shall restore the leasehold to the condition it was in at the time Arista took possession.

SO ORDERED.