MINE REALTY CORPORATION, Respondent, *v.* 2131 BROADWAY CORPORATION and FRANK G. SHATTUCK COMPANY, Appellants.

First Department, February 11, 1938.

*Nathan L. Miller* of counsel [*Edward J. Bennett* with him on the brief; *James E. Duross*, attorney], for the appellants.

*Louis Rosenberg* of counsel [*Joseph Feldman* with him on the brief; *Rosenberg & Rosenberg*, attorneys], for the respondent.

TOWNLEY, J. This action was brought by a landlord to restrain its tenant, 2131 Broadway Corporation, and the sublessee, Frank G. Shattuck Company, from removing from the premises certain property belonging to the sublessee. The injunction asked for was granted and incidental relief of a judgment for $17,000 was also allowed as damages for the actual removal of certain articles which it is alleged had become part of the real property by contract.

Plaintiff's grantor leased the premises at 2131 Broadway on May 20, 1929, to 2131 Broadway Corporation for twenty-one years. The lease was under seal and was executed after long negotiations between plaintiff's grantor and Frank G. Shattuck Company. Frank G. Shattuck Company's purpose in entering into these negotiations was to acquire property on which it might erect a building suitable in part for a Schrafft restaurant unit. The Frank G. Shattuck Company, however, was unwilling to make the lease itself and insisted that the tenant be its subsidiary company, 2131 Broadway Corporation. The limit of Frank G. Shattuck Company's obligation under the lease was a guaranty of the faithful performance of its terms up to the time when the old building on the premises should have been demolished and a new one costing at least $150,000 should have been constructed in its place and fully paid for.

The record conclusively established that there was no fraud in the making of the lease and that plaintiff's grantor voluntarily contracted with the subsidiary of the Frank G. Shattuck Company. The lease is a long, carefully thought-out and completely integrated instrument and provides that any changes must be in

writing and signed by both parties. By its terms a new building was to be erected containing two stories and a basement. The plans and specifications were to be submitted for the approval of the landlord. At any time during the term the tenant could demolish any existing building and erect a new building on similar approval of the plans by the landlord. Such approval might not be withheld unreasonably. As we construe the lease any legal use of the premises could be made. The tenant had the right to sublet and was free to make all repairs, alterations and improvements necessary. The building was to become the property of the landlord. Paragraph twenty-seventh, subdivision 5, reads as follows: " 5. The new building to be erected under the terms of this lease and/or any buildings which may be erected upon the demised premises in the future and/or additions, alterations and improvements thereto and all appurtenant fixtures and equipment thereon installed, immediately when erected or installed upon said premises shall be deemed to be attached to the freehold and become the property of the Landlord to the same extent as if the said new building and its equipment had been erected and installed on said premises prior to the execution of this lease, and the terms, conditions and covenants of this lease shall then apply to such building, alterations, additions and improvements, fixtures and equipment installed as if the same were upon the premises at the time of the execution of this lease, and at the end or termination of the term shall be surrendered to the Landlord."

After the lease had been signed, the Frank G. Shattuck Company itself sublet the premises from 2131 Broadway Corporation on a yearly basis until 1932. It then took a five-year lease with an option to cancel on ninety days' notice. In June, 1935, the sublessee terminated the sublease with the 2131 Broadway Corporation and moved out. The landlord then claimed that under its lease with the 2131 Broadway Corporation the restaurant property of the sublessee constituting a complete Schrafft unit had become affixed to the realty and could not be taken out.

After admitting much testimony in violation of the parol evidence rule, the trial court held that the sublease between 2131 Broadway Corporation and the Frank G. Shattuck Company was a fiction deliberately designed to enable the Frank G. Shattuck Company to obtain whatever advantages there might be from the lease after the construction of the building without assuming any liability. The court also found that the relations between the tenant and the sublessee were such as to lead a court of equity to disregard the corporate existence of the 2131 Broadway Corporation. It is not clear what bearing a disregard of the corporate

existence of the tenant has upon the decision of this case. Whoever is the tenant, the right of the landlord to retain trade fixtures must be based on the terms of the lease. The findings on this point are based on incompetent evidence, are irrelevant to the real issue, and, assuming their truth, are immaterial. A new tenant may not be thus substituted by the court. (*Wagner* v. *Manufacturers Trust Co.*, 237 App. Div. 178; affd., 261 N. Y. 699.) As was said in that case:

" In the case at bar it is not charged that there was any fraudulent purpose. There was no concealment. The landlord does not claim that there was any deceit or fraudulent intent or suppression of truth. On the contrary, the landlord with full knowledge of the facts pleaded in the complaint, chose to accept the realty corporation as its tenant when it might well have refused to execute the agreement of lease, unless it was made with, or its performance guaranteed in writing by, the trust company.

" Plaintiffs have no cause of action here at law for rent. The Statute of Frauds would prevent them from holding defendant as the real lessee under a writing which it did not sign. They do not seek reformation of the written lease."

The findings objected to must be reversed.

The trial court also stated that even if the sublease were a *bona fide* transaction, under the terms of the lease itself, all the trade fixtures became the property of the landlord. In coming to this conclusion, the learned court relied upon subdivision 5 of paragraph twenty-seventh of the lease quoted above and subdivision 2 of the same paragraph which provides: " The Tenant at its own expense shall have prepared by a competent architect, plans and specifications of such building to be erected upon the demised premises and shall submit such plans and specifications to the Landlord for its written approval."

The duty of the tenant must be measured by the extent of its promise. As we have seen above, the most that this tenant ever promised to do was to erect a building with proper heating, plumbing and lighting fixtures. No matter what kind of a building was to be put up during the term of the lease, it must have this kind of equipment. There was, however, no specific agreement to use the premises for a particular purpose or to operate during twenty-one years a Schrafft restaurant unit and nothing else as in *Shelton Holding Corp.* v. *150 East 48th Street Corp.* (264 N. Y. 339). Indeed, the building as put up provided for other shops on the premises.

The word " appurtenant " as used in subdivision 5 above quoted did not operate to convey to the landlord rights to everything which might be installed in the building. It conveyed only such

fixtures as under established rules of law were so affixed to the real estate as not to be readily removable without damage to the freehold. (*McKeage* v. *Hanover Fire Insurance Co.*, 81 N. Y. 38; *Central Union Gas Co.* v. *Browning*, 210 id. 10; *Kohler Co.* v. *Brasun*, 249 id. 224; *Andrews* v. *D. B. Co.*, 132 id. 348; *Tifft* v. *Horton*, 53 id. 377.)

We hold that the tenant must deliver up such a building as it promised to erect and such fixtures as are appurtenant to that building. In so far as the sublessee installed a restaurant unit consisting of equipment readily removable without permanently damaging the freehold, such equipment may be taken out without any liability therefor.

It was stated by the landlord's counsel on the argument that plaintiff claimed that some eighty-five articles were so affixed to the realty as not to be removable, even though trade fixtures, because such removal would cause irreparable damage. Accordingly, we are unable to dispose of the complaint at this time, since this issue has not been tried.

The judgment should be reversed, with costs to the appellants, and a new trial ordered.

O'MALLEY, GLENNON and UNTERMYER, JJ., concur; MARTIN, P. J., taking no part.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants.