J.K.S.P. RESTAURANT, INC., Respondent-Appellant, v COUNTY OF NASSAU et al., Appellants-Respondents.

Second Department, March 30, 1987

### APPEARANCES OF COUNSEL

*Edward G. McCabe, County Attorney (Robert O. Boyhan* of counsel), for County of Nassau, appellant-respondent.

*Kaufman & Serota, P. C. (Bernard Meyerson* of counsel), for Hempstead Equities Corp., appellant-respondent.

*Lawrence, Ciovacco & Walsh, P. C. (Lawrence S. Lawrence* and *Jeannine A. Broomhall* of counsel), for respondent-appellant.

### OPINION OF THE COURT

Spatt, J.

This case involves a dispute over the validity of the plaintiff's interest in a prefabricated Kullman dining car (diner) which was assembled onsite at 75 North Franklin Street in the Village of Hempstead, New York, and was formerly operated as the Hempstead Town House. The overriding issue raised on appeal is whether the Hempstead Town House diner is to be treated as realty or personalty. Under the circumstances of this case, we hold that the diner is a trade fixture and thus is personalty, subject to a factual determination as to whether it can be removed without material damage to the freehold.

#### THE FACTS

The land on which the diner is located was separately owned by the landlord-owner (landlord) who was responsible for the payment of real estate taxes on the property. The landlord leased the premises to two individual tenants (2 of the 3 shareholders of the plaintiff corporation) on October 27,

1965, by a written lease which was ultimately assigned to the plaintiff corporation. The lease contained the following paragraph with regard to the status of the diner: "Notwithstanding the provisions of paragraphs 43 and 45 of this agreement it is distinctly understood and agreed that the diner, kitchen and dining room placed or erected upon the demised premises shall be and at all times remain the personal property of the tenant, its assigns or its conditional vendor and may be removed by said tenant, its assigns or conditional vendor at any time and further that said diner, dining room and kitchen shall not be deemed to be attached to the realty as to become part thereof but shall at all times be deemed severable from the realty without material injury to itself or to the freehold."

The plaintiff had purchased the Kullman diner from the manufacturer in 1965. The diner was prefabricated in New Jersey and then transported in three sections on flatbed trailers to the site in Hempstead where it was unloaded, assembled onsite and installed upon the foundation which had been built in the ground. The three sections of the diner were bolted in place. According to the plaintiff's president, the purpose of designing diners in this manner was to retain their character as personalty and allow for easy removal and placement elsewhere.

On November 16, 1979, the plaintiff sold the restaurant business, including the diner and its fixtures, furniture and equipment, to Hellas Restaurant Corp. (Hellas) for $215,000. To secure payment of the unpaid portion of the purchase price, the plaintiff and Hellas entered into a security agreement which set forth a schedule of assets to be collateral securing the debt, including "One Kullman Dining Car #59166 presently located on the premises". The plaintiff filed a form "UCC-1" financing statement with the office of the County Clerk of Nassau County on November 19, 1979, covering the "[d]ining car and all fixtures, equipment, furniture, furnishings and chattels". A similar filing was made on November 26, 1979, with the Secretary of State of New York.

In or about January 1983, Hellas defaulted in the payment of the installments due the plaintiff under the security agreement and abandoned the lease and the property. The plaintiff elected to accelerate the total balance due in accordance with the terms of the security agreement. It subsequently entered upon the premises and attempted to secure the diner in order to sell it to a third party who would then remove it to another location. However, in April or May 1984, as the plaintiff's

successor in interest was about to remove the diner, it was discovered that a tax lien on the property had been sold to the County of Nassau by the Treasurer of Nassau County on February 17, 1981, as a result of several years' accumulation of delinquent real estate taxes. The county foreclosed on its tax lien against the owner of the property and a deed dated March 16, 1984, was issued by the Treasurer of Nassau County to the county. Thereafter, by deed dated December 18, 1984, the county conveyed its interest in the subject property to defendant Hempstead Equities Corp. (Hempstead Equities), the present owner of the real property upon which the diner is located.

Prior to the delivery of the deed to Hempstead Equities and on October 25, 1984, the plaintiff filed a notice of pendency against the premises based upon the instant action which it instituted against the county on the same date. The complaint contains four causes of action seeking the following relief: (1) repossession of the collateral, including the diner; (2) foreclosure on the diner based on its perfected security interest; (3) damages for conversion; and (4) injunctive relief enjoining and restraining the county from disposing of or otherwise impairing the collateral.

The crucial issues in this case, involving the status of the diner and the plaintiff's asserted lien, were raised when the defendant Hempstead Equities moved to cancel the plaintiff's notice of pendency on the ground that it was inconsistent with the plaintiff's position that the diner was personalty, not realty. The plaintiff then cross-moved for summary judgment on its action to repossess the diner, asserting that the diner was personalty by virtue of the lease provisions. The plaintiff also contended that its financing statement filed on November 19, 1979, was a prior lien and that Hempstead Equities took title with full knowledge of and subject to that lien. The defendant county also cross-moved for summary judgment dismissing the complaint on the ground that the diner was part of the real property and not detachable personalty, and that the plaintiff's security interest was, therefore, meaningless. The determination of all three motions is dependent upon the status of the diner as realty or personalty.

In support of its position that the diner was not personalty, Hempstead Equities asserted that it was a one-story masonry structure with a full basement constructed pursuant to plans filed with the Nassau County Building Department. A building permit and a certificate of occupancy for the diner was

issued by the Village of Hempstead to the diner owners. In addition, Hempstead Equities submitted the affidavit of Philip Lindenauer, a licensed architect, who stated that he made an on-site inspection of the premises and, based upon his observations, concluded that the diner was not a temporary or portable structure. Lindenauer further stated that the building was constructed at the site and involved excavation, foundation work, roofers, masonry men, bricklayers, electricians and plumbers, among other tradesmen.

Special Term held that a triable issue of fact existed as to whether the diner retained its status as personal property or became real property. The court partially granted the plaintiff's motion for summary judgment to the extent that the plaintiff was held to be entitled to immediate possession of certain other items of collateral which were indisputably personal property, and otherwise denied all three motions. We affirm.

### THE STATUS OF THE DINER

In determining whether the diner is to be treated as personalty, in which event the plaintiff has a valid security interest, or realty, in which case Hempstead Equities obtained valid title to the land and the diner from the county, extinguishing the plaintiff's rights in the diner, the law involving trade fixtures is applicable. Trade fixtures are articles of personal property which a tenant places upon or annexes to the leased realty for the purpose of carrying on its trade or business during the term of its lease (*East Side Car Wash v K.R.K. Capitol,* 102 AD2d 157; *Cohen v Wittemann,* 100 App Div 338; *Herkimer County Light & Power Co. v Johnson,* 37 App Div 257; *Interstate Lien Corp. v Schmidt,* 180 Misc 910; 23 NY Jur, Fixtures, § 29). Generally, they are installed by the tenant at its own expense to further its business purposes (*East Side Car Wash v K.R.K. Capitol, supra,* at 162). The trade fixtures of a tenant remain personal property so far as the right of removal is concerned, subject to the limitation that "the removal must be accomplished without substantial injury to the freehold", not " 'without [any] injury to said property' " (*Matter of City of New York,* 192 NY 295, 302). Thus, in order for property to meet the definition of a trade fixture, it must be shown (1) that the property was annexed to the leased realty by the tenant, and (2) for the purposes of the tenant's trade or business. However, a trade fixture may not be re-

moved unless this can be accomplished without substantial or material injury to the freehold.

Contrary to the general rule that fixtures become part of the realty and pass with it, trade fixtures remain the personal property of the tenant and are removable by the tenant at the expiration of the term. This is so even with respect to structures as substantial as entire buildings, which have been held to constitute trade fixtures and, thus, are removable by the tenant (see, Matter of City of New York, supra, at 301; Lewis v Ocean Nav. & Pier Co., 125 NY 341; Debobes v Butterfly, 210 App Div 50; Foureal Co. v National Molding Corp., 74 Misc 2d 316; 23 NY Jur, Fixtures, § 32; 2 Warren's Weed, New York Real Property, Fixtures, § 3.02 [4th ed]; 35 Am Jur 2d, Fixtures, § 3).

In addition to buildings, among the types of property that have been held to constitute trade fixtures are bank vaults (President of Manhattan Co. v Mosler Safe Co., 252 App Div 863); brick chimneys (Moore v Wood, 12 Abb Prac 393); docks (Crater's Wharf v Valvoline Oil Co., 204 App Div 840); gasoline service station greasing pits (Marnall Steel Prods. v Bernard, 147 Misc 314, affd 241 App Div 616); and restaurant units (Mine Realty Corp. v 2131 Broadway Corp., 253 App Div 299).

Although there are few cases specifically involving diners as trade fixtures, they have been held to be trade fixtures in several jurisdictions. In Sullivan v Demas (124 Vt 397, 399, 205 A2d 818, 820), it was held that a diner was a trade fixture and, thus, subject to a chattel mortgage: "If such question had been properly presented, the record disclosing that the diner in question had been treated by both parties as personal property by including it in the chattel mortgage would indicate their treatment of the diner as a trade fixture. Dickerman v. Town of Pittsford, 116 Vt. 563, 565. Ejectment does not lie for the recovery of personal property."

In Butler v Butler's Diner (81 RI 43, 98 A2d 875), a receiver of a diner petitioned for instruction as to priority among creditors, including the landlord and a chattel mortgagee. The court held that even though the buildings were annexed to the land, they were not intended to be realty but were intended to remain personalty.

"Here the owner did not place the buildings upon the land but the tenant, Butler's Diner, Inc., did so for the special purpose of conducting its diner or restaurant business. In such circumstances it is generally held that a tenant is presumed

not to intend to enrich the freehold; that he makes the improvements solely for his own benefit; and that it is the policy of the law to allow him to remove them in order to favor trade and encourage industry. 22 Am.Jur., Fixtures, § 40, p 749.

"Whatever is affixed to the land by a tenant for that purpose, whether of wood or of brick, has been held to be removable. *Wiggins Ferry Co.* v. *Ohio & Mississippi Ry. Co.,* 142 U.S. 396. 'The question as to whether a building is or is not a trade fixture is not dependent upon such factors as its size, foundation, method of construction, etc., but the sole question is whether the building is designed for purposes of trade, and if so designed, it is a trade fixture and is removable by the tenant irrespective of other factors.' 22 Am.Jur., Fixtures, § 66, p 783" *(Butler v Butler's Diner, supra,* at 46-47, at 876-877; *see also, Conte v Styli,* 26 Mass App 73, 4 UCC 737, in which a diner was held to be personalty).

Although the diner does appear from the record to be a substantial structure solidly affixed to the realty, as stated above, buildings larger and more permanent appearing have been held to be trade fixtures *(see,* Annotation, *Buildings erected by a tenant as "trade fixtures",* 107 ALR 1153). In *Crater's Wharf v Valvoline Oil Co.* (204 App Div 840, *supra),* a tenant having a 10-year lease on a vacant lot erected a stable, barrel shed, loading shed, frame office building and gas storage pits. These structures, built with materials such as concrete, stone and tile, were held to be removable trade fixtures.

There is no single test to determine when an object is a trade rather than an ordinary fixture, and such determination is generally a mixed question of law and fact. In this case, however, it is clear and uncontroverted that the subject diner was (1) annexed to the leased realty by the tenant, and (2) intended to be used solely for the tenant's business and trade and was built for that particular use. It is only the third element that remains in issue; namely, can the diner be removed without material injury to the freehold? The original parties to the lease specifically addressed this issue by inserting a provision in the lease in which it was agreed by the then owner of the property that the diner shall "at all times remain the personal property of the tenant * * * may be removed by said tenant * * * at any time and * * * shall not be deemed to be attached to the realty * * * but shall at all times be deemed severable from the realty without material injury to itself or to the freehold." Such an agreement is

enforceable as between the parties to the lease and supersedes the general rules of law in this regard *(see, Melton v Fullerton-Weaver Realty Co.,* 214 NY 571; *Lewis v Seabury,* 74 NY 409; 35 Am Jur 2d, Fixtures, § 22; 1 Thompson, Real Property § 80 [1980 vol]).

#### EFFECT OF DEED TO COUNTY AND HEMPSTEAD EQUITIES

We turn now to the effect of the sale of the tax lien to the county and its subsequent conveyance to Hempstead Equities who thereby has owned the real property since December 18, 1984. The following chronology of facts is significant in determining the rights of the parties following sale of the tax lien and deed.

A tax lien sale occurred on February 17, 1981, at which time the county itself purchased a tax lien certificate for the subject property (Real Property Tax Law §§ 1006, 1008). By purchasing the tax lien, the county obtained a lien on the property but not an ownership interest. Such a tax lien cannot be converted to title unless the taxes are not paid for two years and various statutory and administrative procedures are followed *(see, McCann v Scaduto,* 123 AD2d 111; Nassau County Administrative Code §§ 5-33 through 5-53). As this court stated in *McCann:* "Under the Nassau County tax scheme * * * the tax lien sale does not adversely affect the property owner's interest in his property. The only practical effect of the tax lien sale is to change the entity to which the unpaid taxes are owed. The tax lien purchaser does not obtain title to the premises on the date of the sale but merely acquires a tax lien and does not become entitled to exercise any possessory interest in the premises until the end of the statutory two-year redemption period" *(McCann v Scaduto, supra,* at 116-117).

In January 1983, Hellas defaulted on its notes to the plaintiff and abandoned the property. The plaintiff then foreclosed on its security interest in the diner. According to the plaintiff, in January 1983 it entered the property with the consent of the landlord and "secured the dining car". Sometime thereafter, "it entered into an agreement to sell the dining car to a third party to be removed from the site and relocated".

As a general rule, a tenant, or one claiming under him, must exercise his right to remove fixtures before the expiration of his term (23 NY Jur, Fixtures, § 32). In this case, however, the plaintiff had both a contractual right and the landlord's

permission to remove the diner after expiration of the lease (*see*, 1 Thompson, Real Property § 77, at 321; § 80, at 353).

At that point in time, the plaintiff had the right under the lease provision to remove the diner without regard to or responsibility for "material injury * * * to the freehold". Stated otherwise, if the plaintiff had removed the diner prior to March 16, 1984, when the county took title, it could have done so even if material damage to the property would have resulted.

As noted above, the tax deed for the property was conveyed by the County Treasurer to the county on March 16, 1984, and was therefore conveyed by the county to Hempstead Equities on December 18, 1984 (Real Property Tax Law §§ 1018, 1020). On the date of the conveyance to the county, March 16, 1984, all private liens or encumbrances, such as the plaintiff's, were extinguished (Real Property Tax Law § 1020; 72 Am Jur 2d, State and Local Taxation, § 954). As stated by the Court of Appeals: "The purchaser of property at a tax sale, upon receiving a valid deed, acquires a new and complete title to the land under an independent grant from the sovereign, a title free of any prior claims to the property or interests in it and not merely the title of the prior owner or the party assessed for taxes" (*Melahn v Hearn,* 60 NY2d 944, 946).

However, the title acquired under a tax deed is no greater than that of the parties against whom the tax assessment was made (*Hannah v Baylon Holding Corp.,* 28 NY2d 89, 93; *Casaburi v Dow,* 100 AD2d 693; 5A Warren's Weed, New York Real Property, Tax Sales, § 2.34 [4th ed]). Clearly, title to the diner remained in Hellas or the plaintiff and could not be obtained by the purchaser of a tax deed. The diner was the personal property of the plaintiff after the default by Hellas in January 1983 and neither the county nor Hempstead Equities could acquire title to it by purchase of the tax deed (*see, Casaburi v Dow, supra*).

On March 16, 1984, the plaintiff lost its right to remove the diner without regard to potential material damage to the freehold since the new owner, the county, was not bound by the terms of the lease. Therefore, the plaintiff's right to remove the diner without regard to possible material injury to the freehold, as expressly set forth in the lease, expired at that time. Nevertheless, since the diner remained the personalty of the plaintiff due to its status as a trade fixture, notwithstanding the termination of the lease, the plaintiff had

a right to remove the diner provided that removal would not materially damage the freehold.

In sum, the diner was personalty as to the plaintiff, and neither the county nor Hempstead Equities ever acquired title to it. The plaintiff's right to remove the diner without regard to injury to the freehold expired on March 16, 1984, so that, thereafter, the plaintiff could only remove the diner if such removal would not materially damage the freehold. Since there is insufficient evidence in the record before us on this issue, summary judgment cannot be granted to the plaintiff. Under the trade fixture theory, a triable issue of fact exists as to whether removal would materially injure the property.

### THE EFFECT OF THE UCC FILING

With respect to the filing of the UCC-1 form in November 1979, the plaintiff seeks to recover the diner as a "fixture" (as opposed to a trade fixture) pursuant to UCC 9-313. A fixture is defined as any article of personal property which has become so affixed to the land that it becomes part of it (23 NY Jur, Fixtures, § 1), or has become "so related to particular real estate that an interest in [it] arises under the real estate law" (UCC 9-313 [1] [a]). However, as noted earlier, the diner is a trade fixture and, hence, personalty in the eyes of the law (23 NY Jur, Fixtures, § 23). As such, UCC 9-313 is inapplicable. "UCC § 9-313 is to be strictly construed and will not be expanded to apply to structures that do not come within its scope. UCC § 9-313 only applies if the goods are or become fixtures. If the goods are not fixtures, as for example, when they are classified as equipment or trade fixtures, UCC § 9-313 is not applicable" (9 Anderson, Uniform Commercial Code § 9-313:5 [3d ed]; see also, 9 Hawkland, Uniform Commercial Code Series, §§ 9-313:01, 9-313:02, 9-313:04).

We note the distinction between a trade fixture, which is personalty if removable without material alteration to the freehold, and a fixture, which is not removable and is tantamount to realty. The plaintiff's reliance on UCC § 9-313 is misplaced since the diner is a trade fixture and is not within the purport of the statute. Although this segment of the law has been the subject of some confusion (see, 9 Hawkland, Uniform Commercial Code Series § 9-313:02), it is clear in this case that the diner is not a fixture and is not subject to the provisions of UCC 9-313.

The plaintiff further contends that he is entitled to certain

rights under other provisions of UCC article 9. The UCC provisions in question are a complex set of intertwined and overlapping sections dealing with various definitions of property and remedies for the recovery of the same. Emerging from this thicket, and relevant to our discussion, is the concept of "goods". If the diner were considered goods, the plaintiff would have certain rights to recover the diner under UCC article 9. The diner, which we have already determined to be a trade fixture, as such, might be considered goods under UCC 9-105 (1) (h). More particularly, the diner may also be defined as equipment, a subclassification of goods, under UCC 9-109 (2). In this regard, the plaintiff's UCC-1 filings and descriptive security agreements comply with UCC 9-401 (1) (c) and (2). In order to be considered goods, the diner must be "removable". Although it appears incongruous that a diner can be considered goods, some courts have found similar substantial chattels to be goods.

In *Rakosi v General Elec. Credit Corp.* (59 AD2d 553), this court found that two modular homes that were placed on concrete foundations and had sewage, water and electrical service were goods under the subclassification "inventory" and were covered by the UCC-1 filing *(cf., Recchio v Manufacturers & Traders Trust Co.,* 35 AD2d 769, wherein the Fourth Department found that a mobile home was not "consumer goods" but was a motor vehicle within the meaning of UCC 9-302). In *In re Brown* (45 Bankr 766), the Bankruptcy Court held that a mobile home was goods under the subcategory consumer goods and not a fixture and was covered under a UCC filing. In *In re Factory Homes Corp.* (333 F Supp 126), the District Court found that I-beams, steel cranes and drills that were erected and attached to the building were goods under the equipment subcategory and were covered by a UCC filing. Significantly, the court held (at 130) that "[t]rade fixtures by definition are not "fixtures", and that "a trade fixture * * * is not a 'fixture,' but is 'equipment' " *(see also, Corning Bank v Bank of Rector,* 265 Ark 68, 576 SW2d 949 [1979]).

Based upon the record before us, we cannot determine that the diner is "goods" under UCC 9-105 (1) (h) because in order to be such, the diner must be *"movable* at the time the security interest attaches". The record before us is insufficient to determine whether the diner is "movable" pursuant to UCC 9-105 (1) (h) *(see, Dominski v Garrett,* 276 Pa Super 18, 419 A2d 73, where the court declined to declare that a mobile home was "goods" under the UCC because it lacked specific

facts as to affixation). Therefore, before the plaintiff can pursue its remedies as a secured creditor under UCC article 9, the trier of the facts must determine whether the diner is "movable" under UCC 9-105 (1) (h).

### THE EFFECT OF THE BUILDING PERMIT, CERTIFICATE OF OCCUPANCY AND TAXATION OF THE DINER AS REAL PROPERTY

Our determination that the diner is not realty is not altered by the facts that a building permit was obtained to construct the diner, and that a certificate of occupancy was issued after completion of the construction. None of these factors are determinative of the substantive question of whether the diner retained its character as a trade fixture between the owners of the realty and the diner.

Further, that the diner was assessed by the county for real estate tax purposes does not mean that the diner constitutes realty. The structure's classification at common law, while a relevant factor, is not determinative of its taxable status, since the tax statute has set up a standard of its own which must govern each case (see, Matter of Consolidated Edison Co. v City of New York, 44 NY2d 536, 541; Matter of Capri Marina & Pool Club v Board of Assessors, 84 Misc 2d 1096).

In People ex rel. Herzog v Miller (170 Misc 1063, affd 258 App Div 724), Special Term found that although a "lunch wagon" (predecessor of the modern diner) was removable personalty as between the landlord and tenant, the structure was nevertheless taxable as real property because it had every other requisite of a permanent structure, such as an imbedded foundation and connections for electricity, water, gas and sewage. However, the converse has never been held to be true; namely, that merely because property is subject to the real property tax laws, it necessarily constitutes real property for all purposes. That a municipality forecloses on a tax lien against the landowners and subsequently sells the property in question at a tax sale, does not mean that a trade fixture structure situated on the real estate owned by the landowner which has been assessed for taxes will be converted from personalty to real property as a result of its tax status.

In this type of hybrid situation, although the diner is personal property for the purpose of determining whether plaintiff has a valid perfected security interest in the diner and/or whether the diner is a trade fixture, it also has

sufficient attributes of real property so as to be subject to real estate tax assessment. An example of this type of analysis may be found in *Casaburi v Dow* (100 AD2d 693, *supra),* involving mobile homes, in which the Third Department stated:

"Since the Kolvenbacks never had title to defendant's mobile home, it is clear that the county did not obtain title thereto by foreclosing on the basis of the Kolvenbacks' tax indebtedness on the lot where it was parked. Hence, the county could not convey title to defendant's mobile home to plaintiff by the deed which transferred title to the lot.

"Were we to hold otherwise, section 102 (subd 12, par [g]) would have the following unconstitutional results. In the event of a tax foreclosure proceeding, the owners of real property on which mobile homes are parked would receive notice of the foreclosure action, but the owners of the mobile homes, not listed on the assessment rolls as such, would not. The result would be that the mobile homes could be seized and sold at a foreclosure sale before their owners had received notice of the foreclosure and had been afforded an opportunity to be heard. They would thereby be deprived of their property without due process of law (see *Fuentes v Shevin,* 407 US 67, 80)."

The instant case is analogous to *Casaburi (supra).* It is undisputed that the diner was assessed for real estate taxes and that all taxes, including those attributable to the diner, were payable by the landlord. However, the landlord did not have title to the diner. The diner was owned originally by two of the plaintiff's three shareholders, then transferred to the plaintiff corporation, then to Hellas, subject to the plaintiff's security interest and, finally, sold to a third party. At no time did the landlord, who had defaulted in payment on the real estate taxes, own the diner or have any interest in that structure. Therefore, the county could not have acquired title to the diner merely by foreclosing on its tax lien against the landowner. Moreover, as the *Casaburi* court observed, any other result would deprive the plaintiff of its due process right to receive notice of the sale of the property, which concededly was not provided by the county, at least not in the manner required by the United States Supreme Court in *Mennonite Bd. of Missions v Adams* (462 US 791) adopted by the New York Court of Appeals in *Congregation Yetev Lev D'Satmar v County of Sullivan* (59 NY2d 418) and applied by this court in *McCann v Scaduto* (123 AD2d 111, *supra).*

Therefore, we hold that the status of the diner as a trade fixture and, hence, personalty is unaffected by its tax treatment by the county. Irrespective of how the diner was treated for tax purposes, the county could not obtain ownership by foreclosing against the realty and could not, therefore, transfer title to the diner to purchasers of a tax deed from the county. Furthermore, since the plaintiff's UCC-1 financing statement was duly recorded, Hempstead Equities purchased the tax deed with full knowledge of the plaintiff's prior lien on the diner.

We conclude that the diner is the personal property of the plaintiff and may be removed by it if a determination is made, after a trial of the factual issues, that removal can be accomplished without material injury to the freehold. Further, the plaintiff may have a perfected security interest in the diner and may exercise its rights under the UCC if the trier of the facts finds that the diner is "movable" under UCC 9-105 (1) (h). Since there are present the two triable issues of fact above set forth, the plaintiff's motion for summary judgment was properly denied. In addition, for the same reasons, the county's motion for summary judgment dismissing the complaint was also properly denied.

Finally, Special Term correctly denied the motion by defendant Hempstead Equities to cancel the notice of pendency filed by the plaintiff. Although the diner may be personalty and ultimately may be removed by the plaintiff, at this stage of the litigation we cannot state that this action would not "affect the * * * possession, use or enjoyment of [the] real property" (CPLR 6501).

Accordingly, the order appealed from should be affirmed.

Mangano, J. P., Bracken and Kooper, JJ., concur.

Justice Bracken has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.02 [c]).

Ordered that the order of the Supreme Court, Nassau County, dated June 3, 1985, is affirmed insofar as appealed from, without costs or disbursements.