OPINION OF THE COURT
Paul E. Cheeseman, J.
This motion and cross motion for summary judgment arise from the demise of the Colonie Coliseum Theater in Latham, New York, in 1987. In May and June of that year, defendant *389 Allan Gandler entered into two contracts with Adirondack Leasing Associates Ltd. (Adirondack) to guarantee payments to be made to Adirondack under two lease/purchase contracts between Adirondack and, respectively, Colonie Coliseum Enterprises, Inc. (CCE) and Cohen, Denero, Gandler Associates, Inc. (CDGA). Defendant CCE leased the Colonie Coliseum for use as a theater. Defendant Gandler was at the time vice-president of both CCE and CDGA.
The first of the two lease/purchase contracts between Adirondack and CCE was dated May 28, 1987. Its subject was sound and lighting equipment valued at $44,846.45. According to the agreement, CCE was to repay Adirondack in 48 monthly installments totaling $61,776. This agreement was a secured transaction, with the leased equipment constituting the collateral for the credit Adirondack extended to CCE. Accordingly, Adirondack filed financing statements pursuant to the Uniform Commercial Code (UCC) with the New York Secretary of State and with the Albany County Clerk for the purpose of perfecting its security interest. CCE in turn installed the equipment in the Colonie Coliseum.
The second lease/purchase contract between Adirondack and CDGA was dated June 22, 1987 and concerned office furnishings valued at $15,877. This agreement stipulated that CDGA should repay Adirondack in 36 monthly installments, for a total of $21,005.28. There is nothing in the record to indicate that this agreement was a secured transaction, but its terms were otherwise identical to those in the CCE contract of May 28, 1987.
Adirondack assigned its rights under these contracts to plaintiff Norstar Leasing Services, Inc. Thereafter, defendants CCE and CDGA defaulted in their respective payments and defendant Gandler became liable to Norstar as guarantor. CCE made only three payments of $1,377.09 each on its contract while CDGA made only one payment of $624.33 on the contract for office furnishings. Plaintiff then repossessed and sold some of the equipment and furnishings under each contract. Other items covered by the CCE contract, however, remained at the Colonie Coliseum Theater when CCE vacated the premises after October 1987. A new tenant occupied the building which was renamed the Starlight Theater.
This suit subsequently arose between plaintiff and defendant Gandler as to the scope and dollar value of Gandler’s liability as guarantor for the obligations of CCE and CDGA under the two lease/purchase contracts.
*390 Plaintiff now moves for summary judgment alleging that it is entitled to damages of $51,270.53 and $13,054.99 representing the balance due under acceleration clauses in the respective contracts.
Defendant Gandler cross-moves for summary judgment alleging that the equipment remaining in the Colonie Coliseum (now Starlight Theater) constitutes fixtures that Adirondack failed to perfect its security interest in the remaining equipment by failing to file a fixtures financing statement indexed in the real estate index for Albany County, that the collateral was thus impaired and Gandler thus discharged from liability for the balance of CCE’s debts owed to plaintiff, and that Gandler’s liability as guarantor of the CDGA contract is no more than $9,617.52. In the alternative, Gandler alleges that if he is liable under either lease/purchase contract a question of triable fact exists as to damages sustained by plaintiff.
The first issue raised by the parties is whether there is a triable issue of fact as to the status of the equipment which CCE leased from Adirondack installed in the Colonie Coliseum, and left there when it vacated the premises. Is the equipment "fixtures” within the meaning of the UCC, such that Adirondack’s alleged failure to perfect its security interest constituted an unreasonable impairment of the collateral that would justify denying plaintiff’s and granting defendant’s motions for summary judgment, thereby releasing Gandler from liability for the remaining debts owing under that contract?
According to the UCC, "goods are 'fixtures’ when they become so related to particular real estate that an interest in them arises under real estate law”. (UCC 9-313 [1] [a].) As defendant Gandler correctly recognizes the test to be applied to determine whether goods are fixtures requires (1) the actual attachment of the goods to the real estate, (2) the adaptability of the goods to the use for which the real estate is appropriated, and (3) the intent that the annexation be permanent. (See, 59 NY Jur 2d, Fixtures, § 2.)
This test, however, is not in itself dispositive of the issue. Trade fixtures, for example "installed by the tenant at its own expense to further its business purposes” (J.K.S.P. Rest v County of Nassau, 127 AD2d 121, 125 [2d Dept 1987]), retain their character as personal property even though annexed to realty, "subject to the limitation that 'the removal must be accomplished without substantial injury to the freehold’ ”. *391 (Supra, at 125, quoting Matter of City of New York, 192 NY 295, 302 [1908].)
Moreover, the parties may also agree that goods will remain personal property even though the tenant may attach them to the realty. (Supra, 127 AD2d, at 127-128.) "Such an agreement is enforceable as between the parties to the lease and supersedes the general rules of law in this regard”. (Supra, at 127-128.)
Although neither party raises the issue of trade fixtures in the instant case, there was such an agreement in the contract between CCE and Adirondack. Paragraph 5 of the contract plainly states, inter alla, that "Lessor and Lessee hereby confirm their intent that the Equipment shall always remain and be deemed personal property even though said Equipment may hereafter become attached or affixed to realty.”
Nor does the record contradict the intent plainly manifested in this contractual term, despite defendant Gandler’s. protestations to the contrary. The financing statement which Adirondack filed with the Secretary of State gives no indication that the equipment will be fixtures. While the local financing statement filed with the Albany County Clerk does indicate the goods are to be affixed to realty, the statement does not reflect that it is to be indexed in the real estate index. As defendant’s UCC search clearly shows, it was properly indexed in the Albany County UCC index as personal property. The record thus presents no factual dispute that the equipment leased to CCE on May 28, 1987 remained personal property.
Once it is determined that the equipment remained personal property, defendant Gandler’s remaining arguments on this issue collapse. Because the equipment was not fixtures, Adirondack did not need to file a fixtures financing statement in the real estate records for Albany County. (See, UCC 9-403 [7].) Adirondack instead complied with the dual filing requirement applicable to secured interests in personal property under UCC 9-401 (1) (c). Since Adirondack thus perfected its security interest, there was no impairment of the collateral (see, UCC 3-606 [1] [b]), and therefore no basis for discharging Gandler from his guarantee obligation to plaintiff (compare, Executive Bank v Tighe, 66 AD2d 70, 76 [2d Dept 1978], later appeal 54 NY2d 330 [1981]). Gandler thus remains liable to plaintiff as guarantor for the obligations set forth in the Adirondack-CCE lease/purchase contract of May 28, 1987.
Plaintiff’s motion for summary judgment on this issue of *392 liability is granted and defendant’s cross motion for summary judgment is denied.
The second issue which the parties raise concerns whether the default provisions and remedies available to plaintiff under the two lease/purchase contracts are fully enforceable.
Both contracts contain identical terms that allow plaintiff to accelerate the balance of the unpaid lease installments in the event of a default. The UCC generally permits acceleration clauses in agreements provided that the party having power to accelerate payments exercises that power in the good-faith belief that the prospect of repayment or performance is impaired. (UCC 1-208.) Plaintiff urges that since defendants CCE and CDGA defaulted on their payments under the contracts assigned to it by Adirondack it had the power under UCC article 9 to "sell, lease or otherwise dispose of any or all of the collateral”. (UCC 9-504 [1].)
UCC 9-504, however, applies only to secured transactions. While the lease/purchase contract with CCE dated May 28, 1987 was a secured transaction, nothing in the record indicates that the same can be said of the lease/purchase agreement with CDGA dated June 22, 1987. It is therefore unclear whether the UCC provisions govern that agreement.
Moreover, a close inspection of the record reveals serious factual discrepancies- in the methods , of calculation which the parties have employed to determine the amount of defendant Gandler’s obligations as guarantor.
Because there are triable issues of fact relating to the amount and extent of damages (CPLR 3212), the motion and cross motion for summary judgment as to this issue are denied.