**In re VICTORY MARKETS INC., Debtor.**

**In re DUNCO REALTY & EQUIPMENT CORP., Debtor.**

**In re VM CUSTOM FIXTURES, INC., Debtor.**

**In re FOOD KING, INC., Debtor.**

**In re NORWICH RECYCLING CORP., Debtor.**

**In re GEDDES ST. PLAZA ASSOC., INC., Debtor.**

**Bankruptcy Nos. 95–63366, 95–63367, 95–63368, 95–63369, 95–63370 and 95–63371.**

United States Bankruptcy Court, N.D. New York.

Sept. 24, 1996.

Lacy, Katzen, Ryen & Mittleman, LLP (Stephen P. Mayka, of counsel), Rochester, NY, for Supermarket Equipment Resale.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, Mitchell Katz, of counsel), Syracuse, NY, for Debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion by Supermarket Equipment Resale, Inc. ("SER") brought on by an Order to Show Cause dated August 30, 1996, seeking the enforcement of an Order signed by the Court on May 22, 1996, which approved the sale of personal property out of the ordinary course of business ("Sale Order"), pursuant to § 363 of the Bankruptcy Code (11 U.S.C. §§ 101– 1330) ("Code"). Opposition to the motion was filed on September 6, 1996, by Victory Markets, Inc. ("Debtor").

The motion was heard at the Court's regular motion term on September 9, 1996, in Binghamton, New York. The Court heard oral argument, and the matter was scheduled for an evidentiary hearing on September 16, 1996, in Utica, New York. Following testimony, the matter was submitted for decision by the Court.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(A), and (N).

### FACTS

Debtor, along with five of its wholly-owned subsidiaries, filed voluntary petitions pursuant to Chapter 11 of the Code on September 20, 1995. At the time of filing, Debtor operated approximately fifty grocery stores throughout the northern and central New York State regions under the trade name "Great American Food Stores." Since the

filing of the petition, Debtor has continued to operate and manage its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Code.

On May 1, 1996, Debtor filed a motion on shortened notice for an order approving the sale of personal property. According to the motion, the Debtor had entered into a contract on or about April 15, 1996 ("Contract"), with SER for the sale of "all the Debtor's refrigeration equipment, walk-in coolers and freezers ('Equipment') located at its frozen food warehouse in Norwich, New York, for the sale price of $50,000." In support of its motion, Debtor asserted that it was not utilizing the "Equipment" and had no need for it in its business operations.

The motion was heard at the Court's regular motion term in Syracuse, New York, on May 14, 1996, and the Sale Order was signed May 22, 1996.

A dispute has now arisen as to the meaning of the terms in the Contract. The issue presented to the Court is whether the Contract included the sale of the outer walls and roof of the coolers and freezers.

### ARGUMENTS

Tommy Breedlove ("Breedlove"), President of SER, contends that the Contract included the sale of an entire 72,415 square-foot walk-in cooler that is contiguous to the main building of the Debtor's Norwich facility (see Application of Tommy Breedlove in Support of Order to Show Cause ("Application"), dated August 28, 1996, at ¶ 6), and

that the outer walls and roof were part of the sale. Pursuant to a blueprint and a component parts list allegedly provided to SER by the Debtor, but not attached to the Contract, SER claims that the sale included "the entire walk-in cooler, all refrigeration equipment, component parts, and electrical control panel located outside the cooler, the exterior walls of the Debtor's cooler, steel supports, the cooler room, a number of large cooling coils and related plumbing, a number of roof top condensers, all electric wiring, low temperature lighting units and shelving within the cooler box." See Application, at ¶ 7.

According to the actual terms of the Contract, Debtor agreed to sell "[a]ll refrigeration equipment, walk-in coolers and freezers located at Norwich frozen food warehouse." See Exhibit "A" of SER's motion. Debtor contends that the Sale Order only authorized the sale of personal property, not the outer walls and roof. "Personal property," it argues, does not include property erected on or affixed to the land, which is generally denominated as "real property." See ¶ 7 of Debtor's Opposition. Debtor asserts that in order for SER to prevail, the Court would have to find that the building constituted personal property. Furthermore, Debtor asserts that since SER drafted the contract, any ambiguity should be construed against SER.[1]

For the purpose of ease of discussion only, the term "all refrigeration equipment, walk-in coolers and freezers located at the Norwich frozen food warehouse" will be hereinafter be referred to as the "walk-in cooler."[2]

---

1. Debtor, however, contends that the Contract was not ambiguous and objected to SER's introduction of parol evidence to otherwise explain the terms of the Contract. The Court reserved on the admissibility of parol evidence at the hearing. In light of the decision herein, however, reference to parol evidence is unnecessary.

2. The Court notes that while Breedlove believed that he bid on and purchased a separate produce cooler (also located on the property) as part of the Contract, he testified that he was told that the produce cooler had been sold to another bidder. Breedlove did not object to carrying out the Contract despite this fact. According to Breedlove's Application, the area of the walk-in cooler purchased was 72,415 square feet. Breedlove testified, however, that the area used for freezing and cooling, outlined in pink marker on SER's

Exhibit "O" and which is the subject of this dispute, is approximately 52,000 square feet. This apparent discrepancy is resolved by reference to Debtor's Exhibit "6," which is another blueprint of the complex on the Norwich Property. The square foot breakdown provided in Exhibit "6" indicates that the total area of the coolers, including the produce cooler, is 72,415 square feet. Subtracting the produce cooler from the total yields a remaining area of 57,370 square feet. This change reconciles the difference between the square footage listed in Breedlove's Application and his testimony.

The Court also notes that while the Application included the shelving within the "cooler box," Breedlove testified that this was not part of the Contract.

## DISCUSSION

█ The parties to this dispute have both argued their positions that the contract at issue between SER and Debtor, to sell "[a]ll refrigeration equipment, walk-in coolers and freezers located at Norwich frozen food warehouse," is unambiguous and clear on its face, and yet the parties proffer two dissimilar interpretations of the above terms. While SER claims that the contract clearly included the outer walls and the roof of the walk-in cooler in the sale, Debtor claims that the contract embodied a sale only of the personal property, which does not include the outer walls and roof.

To resolve this matter, the Court must look to the terms of the Contract. The single page Contract at issue reveals language stating that the "[g]RANTOR hereby represents and warrants that the *personal* property is owned by the Grantor and is subject to no mortgage, ..." in reference to the conveyance of the property described therein from Debtor to SER. *See* Contract, at 1 (emphasis added). Furthermore, in the Sale Order, the Court authorized the sale to SER of certain personal property owned by Debtor, which included all refrigeration equipment, walk-in coolers and freezers located at Debtor's frozen food warehouse in Norwich, New York. *See* Sale Order, at 1–2. Since by their terms the Contract and the Sale Order involved the sale of personal property of the Debtor, the property at issue must be examined to determine whether it is properly characterized as personal property or real property.

█ To shed light on this issue, the Court refers to the law relating to fixtures, and it is upon this discussion that the disposition of the outer walls and roof of the walk-in cooler is determined. A "fixture" is "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the real property." BLACK'S LAW DICTIONARY 638 (6th ed. 1990). In New York, personal property is examined under a three part test to determine whether it is a fixture. *Matter of Metromedia, Inc. v. Tax Commission of the City of New York*, 60 N.Y.2d 85, 90, 468 N.Y.S.2d 457, 455 N.E.2d 1252 (1983). To

meet the definition of a fixture, the personal property must: (1) be annexed to the real property or something appurtenant thereto; (2) be applied to the use or purpose for which the realty it is attached to is used; and (3) it must be intended by the parties to be a permanent accession to the realty. *Id.* Under a somewhat different test, the court may look to whether the removal of the property would materially damage the property or the realty, and secondly, if the item is removable, whether such removal would reduce the value of the premises to a potential tenant. *In re H & S Manufacturing Inc.*, 13 B.R. 692, 696 (Bankr.E.D.N.Y.1981). The third step in the latter test is the same as in *Metromedia*. This third test, whether the party making the annexation intended it to be permanent annexation to the freehold, has been accorded greater weight in the determination of whether property is a fixture. *H & S Manufacturing*, 13 B.R. at 696.

Examining the walk-in cooler under the *Metromedia* test, it is clear that it is annexed to the real property, as it is composed of sections of insulated cooler panels, bolted together and supported by steel, which rest on a concrete base, with an insulated panel roof supported by steel which is bolted to the concrete base (*see* Direct Examination of Breedlove by Stephen Mayka, Esq. ("Mayka"), September 16, 1996; *Voir dire* of Breedlove by Mitchell Katz, Esq. ("Katz"), during Direct Examination by Mayka, September 16, 1996), and that it is used for the purpose for which the land beneath it was appropriated. *See Metromedia*, 60 N.Y.2d at 90, 468 N.Y.S.2d 457, 455 N.E.2d 1252. The walk-in cooler is located on a portion of the Norwich Property, and in this area there are loading docks on two sides accessible to trucks for the purpose of delivering goods to the walk-in cooler. Consideration of the somewhat different test found in *H & S Manufacturing* discloses that the walk-in cooler also meets the first two elements required for the definition of a fixture. Removal of the outer walls of the walk-in cooler would materially damage the realty, as 59 feet of the back wall of an office building abutting the walk-in cooler would be left exposed due to the removal. *See* Direct Ex-

amination Breedlove by Mayka, September 16, 1996. In addition, removal of the property would reduce the value of the premises, as the outer walls and ceiling of the walk-in cooler have value and could be put to use.

The third element under both of the above tests is whether the party intended that the property be a permanent accession to the realty. The fact that the walk-in cooler is bolted to the concrete base and the provision of large loading docks for trucks attached to the property is evidence that Victory intended it to be a permanent accession. Furthermore, Debtor is the owner of the real property, and nothing gives this Court the impression that this walk-in cooler was not intended to be permanently affixed.

Thus, all of the elements for consideration as a fixture have been met, and the Court deems the outer walls and roof of the walk-in cooler to be a fixture.

An examination of the Court's prior Orders relating to the sale of property of the Debtor is also dispositive. In its Order, dated March 29, 1996, the Court approved, *inter alia*, the sale of certain real property owned by Debtor, including the Norwich Property, to Charter Asset Corporation ("Charter"). *See* Order dated March 29, 1996, at 3. The walk-in cooler is located on the Norwich Property, and since the outer walls and roof of the cooler are deemed part of the realty based upon the foregoing analysis, they pass or passed to Charter under the Order of March 29, 1996. Debtor therefore did not possess the outside walls and roof to sell at the time of the Contract on April 15, 1996, or the Order of May 22, 1996, approving the sale of personal property to SER.

■■■ The Court is aware that this characterization means that the walls and roof are real property that will or have passed to Charter under the Order dated March 29, 1996, and that this characterization may lead to an inquiry of whether the walls and roof actually constitute a "trade fixture," which maintains its status as personal property. Such an argument is unavailing to SER in this particular case. A "trade fixture" is a fixture or improvement which is placed on or annexed to real property by a tenant for the purpose of carrying on its business during the lease term. *J.K.S.P. Restaurant, Inc. v. Nassau County,* 127 A.D.2d 121, 125, 513 N.Y.S.2d 716, 720 (2d Dept.1987); *see also Shell Oil Co. v. Capparelli,* 648 F.Supp. 1052, 1055 (S.D.N.Y.1986) The purpose of this rule is to promote the efficient use of leased property by a tenant. *Arista Devices Corp. v. Deam Associates (In re Arista Devices Corp.),* 94 B.R. 26, 30 (E.D.N.Y.1988). Trade fixtures of the tenant retain their classification as personal property, to the extent that they can be removed without substantial injury to the freehold. *J.K.S.P.,* 127 A.D.2d at 125, 513 N.Y.S.2d 716. Without this protection, tenants would be unlikely to invest in fixtures due to the loss at the end of the lease term, even though such fixtures would be useful to the tenant. *Arista,* 94 B.R. at 30. This problem does not exist in the case at bar. Debtor is not a tenant, but the owner of the real property upon which the walk-in cooler is fixed. The purpose behind the rule, to prevent a tenant from losing his investment in a fixture, is not served in this case because Debtor was not a tenant and was in no danger of losing its interest in the property.

Despite an able argument by counsel for SER, the Court must find that the outer walls and roof of the walk-in cooler were fixtures, which became part of the realty, and thus pass or passed to Charter under the Order of March 29, 1996, authorizing the sale of the real property. While it is clear that SER may not remove the outer walls and roof of the cooler, the Contract allows for the sale of the personal property located within them. This includes, but may not be limited to, interior partition walls, mechanical equipment, doors, and electrical wiring (*see* Exhibit "H" of Order to Show Cause to Enforce Order Approving Sale of Personal Property Pursuant to 11 U.S.C. § 363(B) and (F) to Supermarket Equipment Resale, Inc. and for Other Relief, dated August 30, 1996), along with any other refrigeration equipment, walk-in coolers and freezers located at the Norwich frozen food warehouse that could properly be classified as personal property, as opposed to real property.

The Court does not make any determination as to alleged representations made to SER by agents or representatives of Victory. Claims for damages, including a claim by SER alleging that some personal property that was sold under the Contract is now missing, will be the subject of a subsequent hearing.[3]

Based upon the foregoing it is

ORDERED that the relief sought by SER in the Order to Show Cause dated August 30, 1996, interpreting the Contract and the Order entered May 22, 1996, and permitting SER to remove the walk-in cooler and other refrigeration equipment from Debtor's property to the extent it includes the "exterior cooler walls" and "cooler roof" be and hereby is denied, and it is further

ORDERED that SER be granted immediate and free access to Debtor's property to remove that property which was purchased under the Sale Order, in conformance with this Decision, and it is further

ORDERED that the temporary restraining order granted by this Court in connection therewith be and the same is hereby vacated, and it is finally

ORDERED that any other administrative claims SER may assert against the Debtor will be scheduled to be heard before this Court at an evidentiary hearing to be held on November 7, 1996 at the U.S. Courthouse, Utica, New York at 10:00 A.M.

---

**3.** In its objection to SER's Application and at the evidentiary hearing, Debtor offered to return the $50,000 paid by SER and cancel the Contract as void. The Court, however, believes that such a result would be dictated where the facts presented suggest a mutual mistake of the parties as to a material fact. *See Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp.,* 682 F.2d 330, 333 (2d Cir.1982). The Court is unable to discern a *mutual* mistake from the evidence presented here.