McKesson Automated Healthcare, Inc. v Brooklyn Hosp. Ctr. (2004 NY Slip Op 24205)

McKesson Automated Healthcare, Inc. v Brooklyn Hosp. Ctr.

2004 NY Slip Op 24205 [4 Misc 3d 491]

June 14, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 8, 2004

[*1]
McKesson Automated Healthcare, Inc., et al., Plaintiffs,
v
Brooklyn Hospital Center, Defendant.
Supreme Court, Kings County, June 14, 2004

APPEARANCES OF COUNSEL

Manatt, Phelps & Phillips, New York City, for plaintiffs. Garfunkel Wild & Travis, P.C., Great Neck, for defendants.

{**4 Misc 3d at 492} OPINION OF THE COURT

Arthur M. Schack, J. 
This case is a battle in a war between billionaire "Goliath" plaintiffs (hereinafter McKesson) and millionaire "David" defendant (hereinafter BHC). "Goliath" McKesson is a corporation that in the last nine months of 2003, according to page 4 of its Securities and Exchange Commission (SEC) 10-Q filing for December 31, 2003, dated January 29, 2004, had revenues in excess of $51 billion; and had a gross profit, according to page 32 of its 10-K SEC filing for fiscal 2003, ending on March 31, 2003, dated June 15, 2003, of more than $3 billion. BHC, a 483-bed not-for-profit institution, according to its Internal Revenue Service form 990 for 2002, dated November 24, 2003, had revenues in excess of $329 million and expenses in excess of $375 million for a loss of almost $46 million, while, according to its form 990 part V attachment, paying $748,303 in compensation to its president and chief executive officer. It is worth noting that stock analyst Curt Morrison's March 23, 2004 report, posted on line at Morningstar.com, described plaintiff and two other corporations, [*2]AmerisourceBergen and Cardinal Health, as part of "an oligopoly that controls 90% of the nation's drug-distribution business." Mr. Morrison begins his analysis of McKesson by stating "[w]e are concerned about a deteriorating business model, aggressive accounting, litigation risk, and poor corporate governance at McKesson."
McKesson, in the instant case, moves by order to show cause, pursuant to CPLR 7102, for an order directing the sheriff to seize Robot-Rx, serial No. S001125, from BHC, and if BHC does not deliver Robot-Rx to the sheriff, for the sheriff to "break open, enter and search for the Robot-Rx on the Hospital's premises" with a representative of McKesson accompanying the sheriff during the execution of the order of seizure "for the purpose in assisting in the identification and removal of the Robot-Rx." McKesson's counsel, in paragraph 1 of his affirmation in support of the order of seizure, states that his application{**4 Misc 3d at 493} is based upon BHC's default of an October 4, 2001 stipulation of settlement. McKesson, on October 3, 2003, had the Kings County Clerk, pursuant to CPLR 3215 (i), enter a judgment for $1,554,190.09 in money damages against defendant BHC (affirmation in support, exhibit 3). The judgment makes no mention of chattel.
This court has before it the question of whether a plaintiff who has had a judgment for money damages only entered against a defendant for defendant's failure to comply with a stipulation of settlement may use a replevin order to seize chattel rented by plaintiff to a defendant. The answer is no. Plaintiffs may have, absent a severance, only one judgment in an action. Plaintiffs had their judgment, which is res judicata, in the instant case entered on October 3, 2003. Further, replevin is a prejudgment quasi-provisional remedy, not a postjudgment remedy, and thus improper in this action. (See Siegel, NY Prac § 337, at 513 [3d ed].) Finally, allowing McKesson to seize Robot-Rx would be unconscionable and violate public policy.

Statement of Facts and Procedural History

In March 2000 BHC entered into three agreements with McKesson. First, BHC leased Robot-Rx from McKesson, with computer software, packaging software, all replacement parts, repairs, additions, and accessories, for five years from July 7, 2000 to July 6, 2005, for $19,233 per month, with a total rent of $923,192 for the term of the agreement (affirmation in support, exhibit 5). Section 1 of the rental agreement defines Robot-Rx as "[a] multi-axis robotic arm controlled by four networked personal computers, which is capable of automating the dispensing, checking, and returning functions of a centralized medication distribution system in a hospital environment."
Simultaneous with the robot lease contract, BHC and McKesson signed an installation, maintenance support, license and warranty agreement, coextensive with the lease of the robot (exhibit 2 of affirmation in opposition), with an installation fee of $65,000 and a monthly support fee of $8,902, for total support fees of $534,120 for the term of the agreement.
Then, the parties signed a Pak-Plus Rx service agreement that obligated McKesson to provide BHC with on-site pharmaceutical packaging services to be provided by no more than two full- or part-time McKesson technicians through the lease term (affirmation in opposition, exhibit 3), with a minimum payment of $9,705 for each 28-day payment period, based upon a predetermined {**4 Misc 3d at 494}number of prescriptions filled each payment period. This is a minimum annual payment of $126,165.
Defendant BHC alleges that McKesson did not fully provide the contracted services (paras 25-32 of BHC Executive Vice-President Richard Braun's affidavit in opposition) for maintenance, support and system upgrades, and failed to: ensure that the automated equipment worked properly; correct inventory problems; and respond to the hospital's complaints in a timely fashion. Pursuant to section 2.3 of the Pak-Plus Rx service agreement (affirmation in opposition, exhibit 3) BHC did not make payments to plaintiffs because the robot was not operational. Plaintiffs then commenced this action for breach of contract. In October 2001 the parties settled the action with a stipulation of settlement that modified and extended the March 2000 agreements to June 28, 2006, and BHC added McKesson's "Cartless Delivery System" to the Robot-Rx rental agreement.
[*3]
BHC, in the Braun affidavit, claims that the problems continued and McKesson failed to meet its contractual obligations. Mr. Braun claims, in paragraph 32 of his affidavit, that Mr. David Adelman, the newly hired director of BHC's pharmacy, in mid-2003 "spent a tremendous amount of his own time correcting problems with the automated pharmacy equipment that McKesson should have corrected a long time before" and then "the equipment became useful to the Hospital."
According to paragraphs 11 through 13 of plaintiffs' affirmation in support, BHC stopped making its monthly payments, pursuant to the October 2001 stipulation, in March 2003. McKesson sent a letter to BHC to cure the default on September 28, 2003 (affirmation in support, exhibit 2). After the entry of the $1,554,190.09 judgment by the Kings County Clerk on October 3, 2003, the New York City Sheriff executed judgment and levied BHC's accounts at JP Morgan Chase Bank in full satisfaction of the judgment.
Plaintiffs, in their affirmation in support of the order of seizure, very conveniently suffer from legal amnesia and neglect to inform this court that BHC commenced an action in this court, on June 24, 2003, index No. 23115/03, against McKesson for breach of the various contracts, fraudulent inducement for their agreements, and McKesson's unjust enrichment (affirmation in opposition, exhibit 5). Plaintiffs also fail to disclose to this court that one month later, on July 24, 2003 they removed BHC's lawsuit to the United States District Court, Eastern District of New York, on the grounds of diversity of citizenship,{**4 Misc 3d at 495} pursuant to 28 USC § 1441 (b) (affirmation in opposition, exhibit 6). BHC served and filed its formal federal complaint on September 5, 2003 (affirmation in opposition, exhibit 7) and on September 26, 2003 McKesson served its federal answer and counterclaims (affirmation in opposition, exhibit 8). In paragraph 30 of the federal answer and counterclaims, McKesson asked for judgment for the breach of the prior October 3, 2001 stipulation of settlement.
Pursuant to the alleged stipulation breach, McKesson had the Kings County Clerk ex parte enforce the stipulation and enter judgment one week later on October 3, 2003. Defendant BHC became aware of the judgment when JP Morgan Chase Bank informed the hospital on Friday, October 18, 2003 of the restraints placed upon its account (Braun affidavit in opposition, para 36). Mr. Braun then states in paragraph 37 of his affidavit that "[A]fter speaking with McKesson's counsel, the Hospital learned, for the first time that Friday afternoon that McKesson had obtained a default judgment from this state court pursuant to CPLR 3215 (i) based upon the October 2001 Stipulation of Settlement and an Affirmation . . . submitted by McKesson's counsel."

Judgment and Res Judicata

Plaintiffs' course of conduct does not allow plaintiffs to have their judgment and Robot-Rx too. It is clear that the October 3, 2003 judgment in the instant case is a final judgment, pursuant to CPLR 5011. Further, pursuant to CPLR 5012, the court has not ordered severance of any of the causes of action, in the instant case, including possession of the automated pharmacy equipment. Therefore, as enunciated in Bennett v Long Is. Light. Co. (262 AD2d 437, 438 [2d Dept 1999]), "without a severance there can be only one judgment entered in a civil action . . . ." (Citations omitted; see Conrad v County of Westchester, 259 AD2d 724 [2d Dept 1999]; Johnson v Suffolk County Police Dept., 260 AD2d 441 [2d Dept 1999]; Marasia v Noyl Coram, 260 AD2d 607 [2d Dept 1999]; Stevenson v Lazzari, 7 AD3d 693 [2d Dept 2004].)
Under the doctrine of res judicata or claim preclusion, McKesson is prohibited from relitigating an issue that was, could have, or should have been raised before entry of judgment in this lawsuit. (See Sun Plaza Enters. Corp. v Crown Theatres, 307 AD2d 351 [2d Dept 2003].) McKesson sought ex parte a judgment, received a judgment, and must now live with its decision.{**4 Misc 3d at 496} In County of Nassau v New York State Pub. Empl. Relations Bd. (151 AD2d 168, 185-186 [2d Dept 1989]), the Court instructed that
"[t]he doctrine of res judicata prohibits a party from relitigating any claim which could have been or which should have been litigated in a prior proceeding (see, Hyman v Hillelson, 79 AD2d 725, 726 [1980], affd 55 NY2d 624). Pursuant to the doctrine of res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy' (O'Brien v City of Syracuse, 54 NY2d 353, 357; see also, Smith v Russell Sage Coll., 54 NY2d 185; Matter of Reilly v Reid, 45 NY2d 24; Feigen v Advance Capital Mgt. Corp., 146 AD2d 556, 558; Yerg v Board of Educ., 141 AD2d 537, 538; Restatement [Second] of Judgments § 24)."
The October 3, 2003 judgment did not award McKesson possession of the automated pharmacy equipment. McKesson cannot now assert a claim for possession of the equipment. If McKesson still wants to obtain the chattel it can move, pursuant to CPLR 5015, to vacate the October 3, 2003 judgment. Of course, granting such a motion would require McKesson to return to BHC all monies that it received by execution of the October 3, 2003 judgment, with interest. If McKesson returns the $1,554,190.09 executed against BHC, and statutory interest from the date of execution, this court, as described below, might grant the application for an order of seizure of the robot and related equipment, pursuant to CPLR 7102.

Replevin is a Quasi-Provisional Remedy

[2] CPLR 6001 lists the four provisional remedies: attachment, injunction, receivership, and notice of pendency. These prejudgment interim remedies are "provisional" because they allow a plaintiff to have protection or security while an action is pending. In a replevin action an order to seize chattel is a quasi-provisional prejudgment remedy. Professor David Siegel, in New York Practice § 306 (at 469 [3d ed]), instructs that an order of seizure in a replevin action "is not officially 'provisional' because it can result in the plaintiff's actually getting the chattel before the action goes to judgment." CPLR 7102, entitled "Seizure of chattel on behalf of plaintiff," is quite detailed in enumerating the requirements to be met for a court to grant an order {**4 Misc 3d at 497}of seizure. In East Side Car Wash v K.R.K. Capitol (102 AD2d 157 [1st Dept 1984], appeal dismissed 63 NY2d 770 [1984]) the Court (at 161), held that "[r]eplevin, or as it is now known, seizure of the subject property, is a procedure in the nature of a provisional remedy which may be used as an incident to an action to recover a chattel . . . ."
McKesson, in the instant action, is moving for a post-judgment order of seizure. McKesson's counsel, in paragraph 15 of his affirmation in support of entry of judgment, dated October 3, 2003 (affirmation in opposition, exhibit 10), asked for possession of Robot-Rx. McKesson, as part of its legal amnesia, only presented to this court a copy of the judgment (affirmation in support, exhibit 3) but somehow neglected to present its counsel's affirmation in support of entry of judgment. The October 3, 2003 judgment explicitly does not include the requested relief of immediate possession of the automated pharmacy equipment.
Viewing plaintiffs' counsel's moving papers in the most favorable light, even if no judgment had been obtained on October 3, 2003, the papers are defective. Plaintiffs have attached to their order to show cause only an affirmation by counsel, with exhibits. Absent is an affidavit from an officer of McKesson. CPLR 7102 (c) requires an affidavit which not only must name the chattel, but list among things, the value of the chattel claimed, and that no "defense to the claim is known to the plaintiff." (CPLR 7102 [c] [6].) Even if there was an affidavit, this court does not know the value of Robot-Rx and related equipment to set the amount for an undertaking, as required by CPLR 7102 (e). Further, in light of BHC's assertions that the robot was inoperable for periods of time, McKesson had to be aware of BHC's defenses.
This court cannot understand how, with a judgment already entered, plaintiffs can seek, by means of a subsequent motion for a prejudgment quasi-provisional remedy, what the court did not award McKesson in the judgment. Further, even if the court could grant an order for seizure [*4]of the robot, McKesson's counsel has submitted defective papers.

Plaintiffs' Attempted Unconscionability and Violation of Public Policy

Even if McKesson could overcome the procedural hurdles outlined above, which it cannot, McKesson still cannot obtain immediate possession of the robot and related pharmacy equipment,{**4 Misc 3d at 498} because such a remedy would be unconscionable and against public policy. McKesson bases its right to the claimed chattel on the stipulation of settlement, which allowed it to both accelerate and seek collection of all amounts due under the parties' agreements through July 2006 and also seek immediate possession of the automated pharmacy equipment. However, while McKesson may simultaneously pursue both remedies, it may retain only one category of relief. To do otherwise, permitting McKesson to retain both all the monies due from BHC through July 2006 and have immediate possession of the equipment, would impose an unconscionable forfeiture and penalty on BHC and contravene public policy. The Court of Appeals in McCoy v Feinman (99 NY2d 295, 302 [2002]) held that
"courts should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress [citations omitted]; or unless the agreement is unconscionable (see Christian v Christian, 42 NY2d 63, 73 [1977]; Mosler Safe Co. v Maiden Lane Safe Deposit Co., 199 NY 479, 485 [1910]) or contrary to public policy (see e.g. Eschbach v Eschbach, 56 NY2d 167, 171 [1982]) . . . ."
Further, in X.L.O. Concrete Corp. v Brady & Co. (104 AD2d 181 [1st Dept 1984], affd 66 NY2d 970 [1985]), the Court held that contractual clauses that impose forfeiture or penalties on a breaching party violate public policy and are unenforceable.
McKesson admitted in its moving papers that it has received full satisfaction of the judgment with the execution on BHC's accounts at JP Morgan Chase Bank. This judgment represents the accelerated payments owed by the hospital under the various agreements of the parties through July 2006, when the terms of the agreements end. For this court to give McKesson immediate possession of the automated pharmacy equipment, after McKesson has received all the monies that it expected to receive through July 2006, would unfairly and improperly penalize the hospital, which has now paid in full for use of the equipment through July 2006.
BHC's retention of the equipment through the terms of the agreements in no way harms McKesson. When the agreements, and then the stipulation of settlement, were signed, McKesson expected that the hospital would possess the automated pharmacy equipment through July 2006 in return for McKesson receiving income from the hospital. Instead of receiving periodic payments through July 2006, McKesson has now received in one {**4 Misc 3d at 499}lump sum, with the judgment execution, all arrears and payments due through July 2006. Mr. Braun, in paragraphs 43 through 45 of his affidavit, explains that BHC has now been able to get the equipment "to operate at a reasonably workable level," and BHC would, if required by the court to return the equipment, have a significant impairment of its operations as the hospital now relies upon the equipment to deliver drugs to patients. Thus, in the instant case, it would be unconscionable and a violation of public policy for McKesson to have a double recovery; namely, the collection of the judgment amount and the possession of Robot-Rx.

Conclusion

Plaintiffs' order to show cause, pursuant to CPLR 7102, for an order of seizure of Robot-Rx, serial No. S001125, is denied in its entirety.